(No. 13665.—Reversed and remanded.)

OLIVER B. MOORE et al. Appellants, vs. THE MACHINERY SALES COMPANY et al. Appellees.

Opinion filed April 21, 1921—Rehearing denied June 8, 1921.

1. NOTICE—actual occupancy of premises is notice of occupant's rights. Actual occupancy of premises is equal to recorded instruments under which an occupant claims in charging notice of the occupant's rights and claims, and a purchaser is bound to inquire by what right or title the occupant holds and takes subject to that right or title.

2. SAME—effect where person occupying as a tenant makes a contract for purchase which he does not record. Where a person occupying part of a building under a lease enters into an unrecorded written contract for the purchase of the premises and thereafter extends his occupancy to such an extent that it may be said to be under the contract, such occupancy is notice of his rights under the contract, and he is entitled to enforce the contract, if he is not in default, as against the owner and a person who subsequently made a contract of purchase with the owner with knowledge that the other party was occupying the premises as a tenant but without inquiring whether he had any other rights. (Coari v. Olsen, 91 Ill. 273, followed.)

3. SPECIFIC PERFORMANCE—when specific performance cannot be denied. To entitle a party to specific performance the contract must be clear and certain in its terms and be admitted or proved with a reasonable degree of certainty, and the court is not warranted in denying such performance where all the necessary elements and conditions are present and it is the only remedy that will do complete justice to the complainant.

APPEAL from the Superior Court of Cook county; the Hon. DENIS E. SULLIVAN, Judge, presiding.

JAY CLIFFORD McCALLY, and MORTON T. CULVER, for appellants.

FLORENCE KING, (MORRILL & SHANNON, of counsel,) for appellee Robert Malcolm.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

The appellants, Oliver B. Moore and his sons, Charles H. Moore and Roy S. Moore, co-partners doing business under the firm name of Moore Bros., filed their bill in the superior court of Cook county against the Machinery Sales Company, a corporation, and Robert Malcom, appellees, praying for the specific performance of a contract made by them January 2, 1920, with the Machinery Sales Company (hereinafter referred to as the company) for the sale and conveyance to them of lots 17 to 26, both inclusive, in block 50, in Grant Locomotive Works addition to Chicago, a subdivision of section 21, township 39, north, range 13, east, in Cook county, Illinois, and for a permanent injunction against Robert Malcom, who claimed said premises under a purported lease. Both the company and Malcom filed their answers denying the material allegations of the bill, and upon issues formed the cause was referred to the master in chancery to take and report the evidence with his findings of facts and his conclusions of law. The master found that the appellants had failed to prove the material allegations of their bill, to which finding appellants filed specific objections, which were overruled by the master. Exceptions were preserved, and upon a hearing before the court the master's report was approved and the bill dismissed for want of equity. The appeal to this court is direct.

The principal questions presented on this appeal are of fact. The evidence is somewhat voluminous. Our conclusions from a consideration of it is, that in so far as the findings of the master and of the court on the material allegations were against appellants they are erroneous and clearly against the manifest weight of the evidence. The company was on January 2, 1920, the owner of the premises in question. On that date it entered into an agreement with appellants for the sale of the premises to them for $15,000, subject to existing leases, appellants to have

the rents from the delivery to them of the deed. By the agreement appellants were to pay, and did pay, $100 in cash as earnest money to the company, which it accepted and appropriated to its use and never has returned or offered to return to appellants. .Appellants were also to pay, within five days after the title had been examined and found good, the further sum of $3900, the sum of $1000 in thirty days and .$1000 in sixty days thereafter at the office of the company, if a good and sufficient· warranty deed should first be delivered to them conveying a good title to the premises, and further subject to all taxes and assessments levied after the year 1919, any unpaid special taxes or assessments levied for improvements not yet made, and to a note and trust deed for $9000, with six per cent interest, dated October 3, 1916, due five years after date, payable to the Chicago Title and Trust Company, trustee, and recorded in said county. Taxes, special assessments, interest on notes secured by the trust deed, water taxes, electric light bills, rents, etc., were to be prorated as of the date of closing the deal and to be secured by notes and mortgage or trust deed on the premises in the form of guaranty policies used by the trust company. The company was to furnish to appellants a complete abstract of title or a merchantable copy within a reasonable time, with a continuation thereof brought down to the date of the contract. In case the title was found materially defective the earnest money should be refunded within ten days thereafter and the contract become inoperative unless the material defects be cured within sixty days after written notice thereof. Should the purchasers fail to perform the contract on their part at the time and· in the manner specified, the earnest money should at the option of the vendor be forfeited as liquidated damages, including commissions payable by the company, and the contract become void. Time was declared to be of the essence of the contract. The contract was signed

by the company by G. Marsh, president, and by Moore Bros. by C. H. Moore.

The master found that the company entered into the foregoing contract in writing with appellants and made the agreements therein recited as made by them. No exception was taken to this finding of fact by the company or by the other appellee, Malcom. They are therefore bound by this finding on this appeal, and cannot question the authority of Marsh, as president, to enter into the contract for the company or that he was not specially authorized to enter into the contract. This finding is also clearly sustained by the evidence, which we think shows that Marsh was authorized generally to execute such a contract on behalf of the company. At least it clearly appears from the record that the contract was entered into by Marsh for the company, who suffered the earnest money to be appropriated by the company and used by it without objection and without offer to return it. The master also found, and the evidence shows, that the company has never made or attempted to make or furnish an abstract of the title in accordance with its contract. The evidence also shows, without question, that appellants repeatedly urged and importuned Marsh, from the time the contract was entered into until about the 11th day of March following, to have prepared and furnish the abstract, which last date was the first time that they obtained knowledge or notice of the fact that the company had entered into and closed a contract for the leasing of the property to Malcom, with an option to purchase the same. During all of this time Marsh continued to assure appellants that the abstract would be furnished to them, and explained the delay by statements, in substance, that the furnishing of the abstract required considerable time.

A contract by the company with F. V. Cannada was entered into January 26, 1920, being a contract of sale to Cannada of this property at the price of $15,100, subject

to one existing lease. This contract was later cancelcd by the mutual agreement of the parties.

The master finds, and it is unquestioned, that the company on February 15, 1920, entered into a lease for the premises with appellee Malcom from January 2, 1920, to January 2, 1930, at a gross rental of $4000, or $400 per year,—a rental which is $140 less than the annual interest payable on the $9000 mortgage,—all of which was paid by Malcom in cash, and in the lease he was given an option to renew it at the expiration thereof for another ten years at the same rental. By the option agreement the $4000 paid by the lessee as rent was to be applied on the purchase price of $17,000 in case the option to purchase was enforced. This lease contract, although entered into on February 15, 1920, was dated back to January 2, 1920, the date of the contract with appellants. By this lease and contract Malcom was to have the entire possession of the premises, and accordingly the company served notices on all the tenants of the premises, including appellants, to vacate before April 1, 1920. Malcom began hauling brick and delivering them on the premises about the 11th day of March, and informed Walter C. Carlson, appellants' superintendent, who was then carrying on appellants' business on the premises, that he had leased the premises from the company and that appellants would have to vacate. Appellants at once notified Malcom and his teamsters of their contract of purchase and that they could not deliver any further material on the premises and that they could not come on the premises with their teams. They also exhibited their contract to Malcom and told him that they had possession and the right to purchase the premises and would insist on it being complied with and forbade him and his teamsters to make further entry. Then followed the filing of this bill, March 17, 1920.

The building on the premises in question occupied about 10,000 square feet and the yard space consisted of about 20,000 square feet, making in all about 30,000 square feet.

On June 10, 1919, appellants became tenants of the company. By their lease they were to have one-fourth of the yard space on the east side and one-fourth of the building space, with free access to and egress from the premises at all times, at a rental of $500 per annum. From the date of their lease until the date of their contract to purchase they had the exclusive possession of their part of the premises and conducted their business thereon, they being dealers in second-hand machinery. Carlson superintended their business, and his hours on the premises were from 8:30 A. M. until 5:30 P. M. They worked a number of other men and carried on the business daily during that time. After they entered into the contract of purchase they occupied all of the premises not actually in active use by the other tenants, with their machinery and various devices for making and repairing machinery. There were a number of other tenants there who had machinery stored but were only there occasionally. They had the use of the devices of the company attached to the premises for making repairs of machinery. These devices were kept in repair by the company before January 2, 1920, and by the appellants thereafter. After that date they continued in the exclusive possession of their leasehold interest and of the other portions of the premises, as already stated, to the beginning of the suit, and still have such possession.

Shortly after the contract of sale appellants learned from the company and from the holder of the $9000 incumbrance that a large amount of the interest thereon was due and unpaid and that the holder had filed a suit for foreclosure and was insisting upon his right to foreclose and would foreclose unless satisfactory payments were made at once. Appellants were not at this time prepared to meet at once the payment of the $9000 incumbrance and had expected to take their deed subject to it, as their contract provided. Realizing the necessity of being prepared for the emergency, they made an arrangement with Fred

W. Brummel by which he was to finance appellants so that they could pay the entire $15,000 cash, if necessary. Brummel arranged to secure for them a first mortgage on the premises for $9000, and had agreed, if they required it, to carry a $6000 incumbrance himself, subject to the first incumbrance of $9000. This arrangement was accomplished about February 15, 1920, and before appellants knew or had notice of either one of the subsequent contracts of sale by the company. This arrangement is clearly proved by the testimony of Brummel and the two Moore brothers and is not disputed by the testimony of any other witness. The company was informed of this arrangement through Marsh as early as February 1, 1920, and Marsh was informed frequently then and thereafter that appellants were ready and willing and able to perform their contract and pay for the premises in cash. This is averred in their bill, and they offer thereby to pay for the premises in cash when the abstract is delivered and it is shown that they can obtain a good and merchantable title.

There is no evidence in this record except that of Viall, secretary and treasurer of the company, that appellants had abandoned their contract or at any time intimated that they could not and would not comply with it fully. Viall is contradicted in his testimony by the two Moore brothers, and he is contradicted in material matters by the testimony of Allen Brainard and Alfred H. Raeckle, the latter being the superintendent and the former an employee of the company. The testimony of Viall is also inconsistent in many respects and contradictory. In short, the evidence clearly shows that appellants at all times insisted on carrying out their contract with the company and on the company carrying out its contract, and Malcom was informed of such facts when he made known his claims to them and that they would insist to the end on their contract rights.

This suit is defended by the company and Malcom, the other appellee, on the ground that it was not and is not

in the power of the appellants to perform their agreements by reason of their financial inability, and that by their conduct the court was warranted in so finding, and in the further finding that they had abandoned their contract. They further insist that contracts affecting real estate in Illinois must be recorded and that a purchaser is not bound to inquire outside of the record title; that the possession of appellants must have been taken pursuant to their contract of purchase before such possession is to be taken as evidence of ownership, and that the possession of the property in question by the appellants, as shown by this record, is not such a possession as will give notice of their claim to the whole of the premises, and that therefore the decree of the lower court should be affirmed. We cannot agree with this conclusion. It is true that Malcom recorded his lease and option contract promptly and that he persistently and consistently neglected and refused to interview appellants as to their claims in reference to the premises, and he testified positively that the first knowledge he had of their claims was on March 12, 1920, when he began delivering material on the premises. He does admit, however, that he knew all about the contract of sale to Cannada, and by his diligence and inquiry found to his absolute satisfaction that that contract had been abandoned and canceled. On cross-examination he did positively testify that he was informed prior to the making of his contract and lease with the company that the Moores were tenants of the property by contract with the company, so it cannot be questioned that he did know that they were tenants of the property before he made his contract with the company. It is also proved that appellants did not have their contract on record at any time before the 12th of March, but that was not necessary in order to charge Malcom with notice of all their rights and claims in the premises.

This court is committed to the doctrine that actual occupancy of premises is equal to recorded instruments under

which an occupant claims in charging notice of the occupant's rights and claims, and that a purchaser is bound to inquire by what right or title he holds. The purchaser also takes the premises subject to that title or interest, whatever it may be. (*Coari* v. *Olsen,* 91 Ill. 273.) This court said in that case: "So far, at least, as the facts of the present case are concerned, we adhere to the common law rule that where a tenant changes his character by agreeing to purchase, his possession amounts to notice of his equitable title as purchaser." The facts in that case were very similar to the facts in this case,—at least they must be considered as of the same character, in effect, as the facts in this case. There, as here, the tenant was in the exclusive and notorious possession of a part, or one floor, of the premises as a tenant, and when he contracted as purchaser for the premises his possession was extended in such a manner that the court was warranted in holding that his extended possession was under and in pursuance of his contract of purchase. The same holding is warranted in this case and is so made. It is true that in many instances specific performance is a matter in the sound discretion of the court, but where all of the necessary elements and conditions are present and performance will do justice between the parties the contract may be enforced. To entitle a party to specific performance the contract must be clear and certain in its terms and be admitted or proved with a reasonable degree of certainty. (*Gronowski* v. *Jozefowicz,* 291 Ill. 266.) Where it is the only remedy that will do complete justice to the complainant and the contract is clear and certain in its terms and is proved with reasonable certainty, as in this case, the court is not warranted in denying specific performance. The evidence discloses with reasonable certainty that the company in this case was hard pressed and that the liens against the property amounted to almost the full purchase price to be paid by appellants. It was unable to meet any of its pressing obligations without a sale, as Viall, its sec-

retary and treasurer and many other witnesses, testified. To compel appellants to seek their remedy at law would, we think, amount to denying them any substantial relief whatever. The decree of the circuit court must therefore be reversed.

Appellee Malcom has no equitable rights whatever in the premises as against the appellants and therefore his lease and option contract should be declared null and void. The company should be required to furnish an abstract in accordance with its agreement.

The decree of the court will therefore be reversed and the cause remanded, with directions that the company be required by the decree of the court to furnish an abstract within a time fixed by the lower court and that a decree of specific performance be entered and the contract and option agreement of Malcom declared null and void. The court should also decree that appellants, within a reasonable time after delivery of the abstract and tender of the deed by the company, pay the full amount agreed to be paid by them that is unpaid, in cash, such reasonable time to be fixed by the court. In case the company refuses to furnish the abstract and perform the decree appellants may do so at its cost and the master execute the deed. The contract of appellants provides for the prorating of taxes, special assessments, interest on notes, etc. This prorating should be provided for by the court's decree and Malcom be protected against the company by providing for the payment to him of the amount he paid the company on his contract out of the amount to be paid by appellants, provided the same can be done without prejudice to appellants. Appellants are entitled to their full rights under the contract without regard to the question of how the decree of the court will affect Malcom. *Reversed and remanded, with directions.*