(No. 19257.—

ROBERT J. GARLICK, Appellant, *vs.* JOSEPH A. IMGRUET, SR., *et al.* Appellees.

*Opinion filed June 20, 1930.*

ARTHUR ABRAHAM, for appellant.

CLINE C. BROSIUS, and IVOR JEFFREYS, for appellees.

Mr. JUSTICE DEYOUNG delivered the opinion of the court:

Robert J. Garlick filed an amended bill in the circuit court of Cook county to set aside as fraudulent a conveyance by Joseph A. Imgruet, Sr., and Mae Imgruet, his wife,

to Russell H. Augspurger of two lots in the city of Chicago and for the specific performance of a contract whereby Imgruet agreed to convey the same lots to the complainant. Imgruet and his wife and Augspurger and Josephine, his wife, were made defendants to the amended bill. Three answers were filed, one by Imgruet, another by his wife, and the third by Augspurger and his wife. Replications were filed to these answers. The cause was referred to a master in chancery who made a report of his findings and recommended that a decree be entered requiring Augspurger and his wife to convey the lots to the complainant upon the payment to Imgruet of the purchase price of the lots, less the amount of an incumbrance thereon. The defendants' objections to the report were overruled. Their exceptions, however, were sustained by the chancellor and a decree was rendered dismissing the amended bill for want of equity. The complainant prosecutes this appeal.

On August 25, 1921, Joseph A. Imgruet, Sr., the owner, by a written instrument, leased lots one and two in block one in Second Roseland Heights subdivision, in the city of Chicago, to Robert J. Garlick for the term of five years from the date of the instrument at a varying money rental, payable monthly in advance. The lease, among other things, provided: "That for and in consideration of the mutual promises and undertakings of the parties hereto, and the payment of rent by the party of the second part, as hereinabove provided, the said party of the second part shall have the right, at the end of the term of this agreement, or at any time during the pendency hereof, to purchase the above described property from the party of the first part, or his heirs, executors, administrators and assigns, for the sum of eleven thousand dollars and, upon the tendering of said amount in lawful money of the United States by the said party of the second part as above provided, the party of the first part hereby agrees to immediately deliver to the said party of the second part a sufficient warranty

deed and Torrens certificate of title covering the premises in question."

At the time of the execution of the lease, the appellant was engaged in the sale and distribution of gasoline, oils and petroleum products in the city of Chicago and vicinity under the name of the Westwood Oil Company, not incorporated. Immediately after the lease was executed he took possession of the lots, erected a filling station upon them and thereafter operated it as a part of his business. On September 8, 1923, he entered into a written contract with William W. Cooper and Rudolph Kohn for the sale to them of his entire business including the good will and the real and personal property used in connection with it, for $158,174.72, of which $135,000 was represented by seventy-five promissory notes, payable monthly, the first on October 1, 1923, and the last on December 1, 1929. This contract contained the following provision: "Upon the payment of the seventy-five promissory notes amounting to the total sum of $135,000, with interest thereon, the party of the first part agrees to promptly sell, assign, transfer, convey and deliver to the parties of the second part, or to whomsoever they shall designate, by good and sufficient warranty deed, free and clear of any and all indebtedness and liens, furnishing abstracts of title, guaranty policies, or certificates of title, to the date of the transfer and conveyance, the following real estate," here describing the lots in question and other real property. Cooper and Kohn thereafter conducted the business under its existing name, the Westwood Oil Company, and in a short time caused it to be incorporated under the same name.

In the progress of its business, the corporation desired to remove a building from the lots and to make certain improvements upon them. Upon learning of the proposed changes, the appellant advised Cooper and Kohn not to make them without first obtaining Imgruet's consent. A trust deed, in the nature of a mortgage, securing the payment of

an indebtedness. of $3000, and executed by the Westwood Oil Company, a corporation, and Imgruet and his wife, was placed upon the premises without the knowledge of the appellant. . Out of the proceeds of this incumbrance and other funds provided by the oil company, the proposed improvements were made at a. cost of approximately $7500. The appellant paid Imgruet the installments of rent which accrued during the whole of the demised term.

. By a letter dated June 3, 1926, written under the direction of the appellant, Imgruet was notified that the former had elected to exercise his option to purchase the lots and was ready to pay the purchase price of $11,000 upon the delivery to him of a warranty deed and a certificate of title as provided in the lease. In response to this notice, Imgruet with his adviser, William A. Johnson, cashier of the Burnside Trust and Savings Bank, and the appellant and his adviser, B. M. O'Connell, cashier of the Marquette Park State Bank, met at the latter bank on June 14 for the purpose of consummating the sale. At this meeting Imgruet produced the certificate of title and it disclosed that the premises had been incumbered for $3000. A discussion ensued and it was proposed on behalf of the appellant that this sum should be placed in escrow until Imgruet obtained a release of the incumbrance. Further discussion followed, during which Imgruet expressed his willingness to protect the appellant, and finally the following written instrument was prepared, read aloud and signed by Imgruet:

"To Robert J. Garlick:

"I find through a misrepresentation that a mortgage of $3000 from Westwood Oil Company, a corporation, myself and wife, to Seymour Marks, trustee, registered under Torrens No. 303832, appears affecting:

."Lots 1 and 2 in block 1 in Second Roseland Heights subdivision of the east 2/3 of the northwest ¼ of section 10, township 37 north, range 14, east of the third principal meridian, in the city of Chicago, Cook county, Illinois, and therefore I am not at this time prepared to deliver to you good and sufficient warranty deed in accordance with your option to purchase the said property as

contained in memorandum of agreement dated the 25th day of August, A. D. 1921.

"Inasmuch as you have signified your readiness and willingness to exercise said option and have tendered payment to me of $11,000 as provided in said option, this letter is written to assure you that the delay in executing the terms of said option is not caused through your fault.

"I will make every effort to cause the said mortgage to be released from the Torrens certificate pertaining to said property so that I will be in a position to deliver the title as agreed under said option.          JOSEPH A. IMGRUET, SR."

On August 21, 1926, Imgruet and his wife, by a warranty deed dated that day, conveyed the lots to Russell H. Augspurger, subject to building restrictions, certain taxes and special assessments and the incumbrance for $3000. The deed recited a consideration of $10, and it was delivered on August 25, and filed in the office of the registrar of titles on the same day. The grantee, Augspurger, was employed in a real estate office, and is the husband of Imgruet's niece.

Imgruet alone testified for the defendants. From his testimony it appears that he first talked with Augspurger about purchasing the lots early in August; that he told him if the option was not exercised and the price of $11,000 was not paid on or before August 25, he would give him an opportunity to purchase the lots; that he was required to raise $15,000 and for that reason was forced to sell the property; that he made the proposition to Augspurger because he was indebted to him; that he told Augspurger about the option and the mortgage, but he did not exhibit the lease to him; that he did not remember whether he told Augspurger about the instrument of June 14, 1926; that he assured Augspurger that if the mortgage was not released, he, Imgruet, would be responsible for it; that Augspurger did not request him to exhibit the lease, but accepted his assurances concerning the option and the mortgage as sufficient and purchased the property for $18,000; that this sum was constituted as follows: By the cancella-

tion of Imgruet's note for $5000, which Augspurger held; by the payment to Imgruet of $2000 in cash, and by the delivery to the latter of four mortgages aggregating $11,-000; that he did not recollect the principals of these mortgages but accepted them merely upon Augspurger's representations and without any investigation; that he did not own the buildings on the lots and did not attempt to sell them; that Augspurger understood he was purchasing only the land; that he delivered the deed and certificate of title to Augspurger and that he thought Augspurger read the deed.

Numerous errors are assigned by the appellant. The substance of his contentions, however, is that having possession of, and erected improvements upon, the lots, first directly and later through his tenants, and having, on his part, exercised the option to purchase the lots, Augspurger, who had both actual and constructive notice of the appellant's interest, was guilty of fraud in procuring the conveyance to himself and that the appellant is therefore entitled to the relief sought. The appellees, on the contrary, deny that Augspurger was guilty of fraud in acquiring the lots from Imgruet, and they insist that the appellant, by the contract with Cooper and Kohn, sold and assigned his right to purchase the property; that, in any event, Augspurger was a *bona fide* purchaser of the lots for value without notice and hence that he has the right to retain them.

The option, by its terms, expired on August 25, 1926. Prior to that day, on June 14, 1926, the appellant sought to exercise the option, and it would have been consummated if Imgruet had been able, at the time, to perform the contract on his part. By his own act he had incumbered the property; and by the instrument of June 14, 1926, he expressly admitted that, on account of the existence of the trust deed, he was not prepared to deliver the deed to the appellant in accordance with the option and that, since the appellant had signified his readiness to exercise the option

and had tendered him $11,000, the purchase price, the delay in consummating the purchase was not the fault of the appellant. Imgruet undertook by the same instrument to make every effort to effect the release of the mortgage so that he would be enabled to convey the title as he had agreed in the option. Under these circumstances, Imgruet's conveyance of the lots to Augspurger in disregard of the option and the instrument of June 14, 1926, recognizing appellant's right to a deed and undertaking to make every effort to have the mortgage released, was, as against the appellant, obviously fraudulent.

The question arises whether Augspurger participated in the perpetration of this fraud. Direct evidence is not always available to prove fraud and it must often be inferred from the facts and circumstances shown. (*Zwick* v. *Catavenis*, 331 Ill. 240; *Duncan* v. *Dazey*, 318 id. 500; *Fabian* v. *Traeger*, 215 id. 220; *Podolski* v. *Stone*, 186 id. 540). Augspurger did not testify, but the defense rests solely upon the testimony of Imgruet. The latter testified that he was compelled to raise $15,000, yet the sale to Augspurger yielded him only $2000 in money. He said that he took, on account of the purchase price, mortgages aggregating $11,000 without any investigation of the values of the properties mortgaged or an examination of the titles thereto. He asserted that he told Augspurger, before he sold the lots to him, that they were subject to an option expiring August 25, but he failed to explain how he could truthfully make that statement, after he had signed the instrument of June 14, 1926. He testified that Augspurger, although informed that the lots were incumbered by an option to purchase for $11,000 and a mortgage for $3000, yet took the title to the lots without examination and paid him the whole purchase price of $18,000. A person experienced in the purchase of real estate, as it appears Augspurger was, would not pay $18,000 for a parcel of incumbered real property which, by the exercise of an option, might be taken from

him for $8000, the purchase price of the equity of redemption. The probability of a loss so substantial is not readily invited. If Augspurger actually paid $18,000 or any other sum for the mortgaged lots, it is strange that he did not testify. Neither the testimony of Imgruet nor the conduct of Augspurger is persuasive that the conveyance to the latter was made for a valuable consideration.

A transfer of property, however, must not only be made upon a good consideration, but it must also be *bona fide*. The general rule is that where a grantor makes a conveyance for the purpose of defrauding another, and the grantee, although paying a valuable and adequate consideration, knowingly assists in effectuating such fraudulent intent or even if he only has notice thereof, he will be regarded as a participator in the fraud for the law never allows one man to assist in cheating another. (*Beidler* v. *Crane*, 135 Ill. 92; *Clark* v..*Harper*, 215 id. 24). Augspurger knew that the appellant had the option and consequently the right to purchase the lots. The relations between Imgruet and Augspurger, the consummation of the conveyance to the latter before the appellant's option expired, the absence of the precautions ordinarily taken by the purchaser in the acquisition of real property and the incredible testimony of Imgruet concerning the consideration paid show that the conveyance to Augspurger was not made in good faith but that its purpose was to defeat the rights of the appellant. The evidence justifies the conclusion that the conveyance was fraudulent as against the appellant and that Augspurger assisted in procuring its execution and delivery.

The appellees argue that the appellant disposed of his rights under the option and for that reason is not entitled to the relief sought. The lease and option contained no prohibition against the sale of the appellant's business to Cooper and Kohn. The contract by which that sale was effected provided that the appellant should convey the lots in question upon the payment of the final installment of the pur-

chase price, the maturity of which was fixed on December 1, 1929. After the contract with Cooper and Kohn was made, the appellant continued to pay the rent to Imgruet as it accrued under the lease. The appellant was not a party to the trust deed in the nature of a mortgage executed by the Westwood Oil Company, a corporation, and Imgruet and his wife, and hence it could not affect his rights under the option. By the instrument of June 14, 1926, Imgruet acknowledged that the appellant had performed the option on his part and was without fault. It follows that the appellant neither lost nor disposed of his rights under the option.

Under the system of recording the evidences of title to real estate in force in this State, the actual occupancy of land is equivalent to the record of the instrument under which the occupant claims so far as notice to subsequent purchasers is concerned. (*Moore* v. *Machinery Sales Co.* 297 Ill. 564; *German-American Bank* v. *Martin,* 277 id. 629; *Coari* v. *Olsen,* 91 id. 273; *Dyer* v. *Martin,* 4 Scam. 146). The lots which are the subject matter of the controversy in this case, however, were registered under the Land Titles act, (Cahill's Stat. 1927, p. 616; Smith's Stat. 1927, p. 662), commonly known as the Torrens law. Section 42 of that act provides: "Except in case of fraud and except as herein otherwise provided, no person taking a transfer of registered land, or any estate or interest therein, or of any charge upon the same from the registered owner shall be held to inquire into the circumstances under which, or the consideration for which such owner or any previous registered owner was registered, or be affected with notice, actual or constructive, of any unregistered trust, lien, claim, demand or interest; and the knowledge that any unregistered trust, lien, claim, demand or interest is in existence shall not of itself be imputed as fraud." While by this section, the purchaser of registered property is unaffected by mere notice, actual or constructive, of any unregistered

trust, lien, claim, demand or interest, yet the section does not permit a purchaser to benefit by a fraudulent conveyance in the procuring of which he participated. The section expressly excludes cases of fraud from its operation.

The appellant, first directly and later through his tenants, was in actual possession of the lots under a lease the term of which was five years. Section 54 of the Land Titles act provides: "A deed, mortgage, lease or other instrument purporting to convey, transfer, mortgage, lease, charge or otherwise deal with registered land, or any estate or interest therein, or charge upon the same, other than a will or lease not exceeding five years where the land is in actual possession of the lessee or his assigns, shall take effect only by way of contract between the parties thereto, and as authority to the registrar to register the transfer, mortgage, lease, charge or other dealing upon compliance with the terms of this act. On the completion of such registration, the land, estate, interest or charge shall become transferred, mortgaged, leased, charged or dealt with according to the purport and terms of the deed, mortgage, lease or other instrument." The term of the lease in question did not exceed five years, and the lease was therefore exempt from the requirement of registration. Augspurger had actual knowledge of the existence of the lease, but even in the absence of such knowledge, the act charged him with notice of it. It is common for leases to contain a provision conferring an option upon the tenant to purchase the demised premises. Such a provision is an integral part of the lease, and it is not obnoxious to the objection that there is a want of mutuality, for the agreement to pay rent or to do other acts will support the option as well as the right to occupy under the lease, and bind the lessor notwithstanding the lessee is not bound to purchase. (*Marske* v. *Willard,* 169 Ill. 276; *McCauley* v. *Coe,* 150 id. 311; *Hayes* v. *O'Brien,* 149 id. 403). The contract embodied in the lease is indi-

visible. Augspurger was charged with notice of the lease, including the option, and he was bound by it.

The decree of the circuit court is reversed and the cause is remanded to that court with directions to enter a decree in conformity with this opinion.

*Reversed and remanded, with directions.*