## ALLEMAN *v.* VINK.

[No. 3,493.  Filed January 7, 1902.]

LANDLORD AND TENANT.—*Tenant Holding Over.*—*Intention.*—A tenant who remains in possession of a dwelling-house after the expiration of the rental period is not relieved from liability for the rent for the succeeding rental period because of an unexpressed purpose on his part to retain possession only till he could procure another house.  *p. 146.*

SAME.—*Tenant Holding Over.*—Where a tenant for a year remains in possession of leased premises after his term has expired without any special agreement, or in the absence of any cause, which might properly be called compulsion or necessity, the landlord has the option to hold him liable as tenant for another year.  *p. 146.*

From Marshall Circuit Court; *A. C. Capron*, Judge.

Action by Charles C. Vink against Charles L. Alleman for rent. From a judgment for defendant, plaintiff appeals. *Reversed.*

*J. D. McLaren,* for appellant.

*E. C. Martindale* and *S. N. Stevens,* for appellee.

BLACK, J.—The appellant sued the appellee for rent for a dwelling-house, charging him in the complaint as a tenant holding over after the expiration of the term of a written lease. We are called upon to review the action of the court in refusing a new trial. By the terms of the lease the appellee was to hold the premises for the full term of two years from and after the 15th of September, 1897, the lessee agreeing to pay as rent the sum of $360, in monthly payments of $15 per month, in advance, payable on the first day of each month, for and during the term.

It also appeared from the evidence that the tenant continued in possession after the expiration of the term created by the lease, and until the 2nd of November, 1899. The business of collecting the rents for the appellant, who resided in Minnesota, was attended to by his father, who resided in the neighborhood of the leased premises. In May, 1899, the appellant's father and agent went to Minnesota on a visit to the appellant, having instructed the appellee to pay the rent during the absence of the agent to a certain bank, to which the business of collecting the rents was given. The appellee paid rent to the bank during the agent's absence. Before July, 1899, he was accustomed to paying three months' rent at one time, but on the 5th of July, 1899, and thereafter he paid to the bank not more than one month's rent at a time, and the bank remitted the rents collected to the appellant. When the appellant's father departed for Minnesota, he informed the appellee that he would return about the first of the following September, but he did not return until the 20th of that month, the term having expired on the 15th of the same month. The last payment of rent was in September, when the appellee paid to the bank $10.00, which amount was $2.50 more than sufficient to pay rent to the end of the term. He testified that when he made this last payment he supposed

the term did not end until September 20th. If this impression had been correct, the payment would not have been more than sufficient for the remainder of the term. It does not appear that the appellant or any representative of the appellant was apprised of this alleged mistake. A letter was written by the cashier of the bank, dated September 12, 1899, addressed to the appellant's father, in Minnesota, which was received and read by the appellant and his father on the 14th or the 15th of the same month, in which letter, after referring to an enclosed draft for rents collected to date, it was said: "Mr. Vink wishes us to say to you that his two years are up for which he contracted, and that he will only pay $12.50 per month for two years. He also says to ask you to at once let him know, as he has not yet laid in winter's supply coal and wood." The language quoted was written pursuant to a request of the appellee to the bank. No answer was sent to the appellee, the matter being ignored by the person to whom the letter was addressed, who, having returned to Plymouth, where the leased property is situated, on the 20th of September, as above stated, first met the appellee two or three days thereafter, on the street. The appellee testified that the appellant's father thereupon told the appellee that he could not accept the latter's proposition, and that the appellee responded, "All right." He also then, as he testified, told appellant's father that there was a pipe leaking in the cellar, and it was damaging some of the floor, and he had better have it fixed; and that he, appellee, had asked Joe Eich to fix the pipes; also, that when the appellant's father went to Minnesota, he told the appellee, if the pipes needed fixing, to have them fixed, and that appellee had asked Mr. Eich to fix them. The appellant's father then said he would fix that. There was no further communication between the parties, except that a day or so before the appellee moved he said to appellant's father on the street that he was going to leave him, to which, according to the testimony of the appellee,

the appellant's father made no reply.  On the 1st and 2nd of November, the appellee removed to another dwelling, and in the evening of the latter day he left the key of the appellant's house with the wife of the appellant's father.

The complaint in this action, to recover four months' rent, was filed on the 20th of December, 1899.  Upon demand made before the commencement of the action, the appellee tendered the sum of $27.50, being the amount of the rent at $15 per month from September 15th to November 15th, 1899, less $2.50 overpaid at the September payment above mentioned.  The money so tendered was brought into court for the appellant.

In the court's instructions to the jury, it was said, that "the term holding over, in a case of this kind, has a specific meaning; it means the holding  of  the possession of the leased premises on the part of the tenant with the purpose still to remain in possession of the leased premises after the original term had expired, and which holding over is with the consent, expressed or implied, of the owner or his agent. So, before you can find that there was a holding over by the defendant, you must find that he remained in possession, and that he remained in possession for the purpose, with the purpose of holding the possession beyond the term of his first lease, the original."

If, taking into consideration all the circumstances, it may properly be said that the holding for about one week after the expiration of the term under the lease was a holding merely pending the determination of negotiations for a reduction of the rent, yet at that time, after the return of the agent, the appellee was definitely informed, not that he must give up the possession of the premises, but that the agent of the lessor could not reduce the rent, to which he responded with the words "All right," and referred to the need of repairs, which the agent then promised to make, and appellee did not say that he would not keep the premises, or that he would remove or surrender possession; and there-

after he continued in possession, allowing days for the payment of rent to pass, not in any way communicating an intention to vacate, until, at his own convenience, when about to remove, he announced that fact to the lessor's agent; and, having completed his removal, he left the key with the wife of the lessor's agent. There was a retention of possession through rent paying periods under a manifestly implied consent of the landlord that the tenant might continue in possession at the old rate of rent. The court's instruction exempting the holding over tenant unless the jury should find that he remained in possession for the purpose of holding beyond the term of the lease was misleading. He did continue to hold possession, and impliedly to instruct that he might do so until it was convenient for him to remove to another residence, without becoming a holding over tenant unless he purposed to be one in his own mind, without communicating his contrary purpose when the circumstances called upon him to do so, can not be commended or allowed. The appellee can not in his own behalf, as against the appellant, claim to have been holding over wrongfully, yet he was not holding over upon his request for permission to occupy temporarily or until he could procure another dwelling-house. See *Hoffman* v. *McCollum,* 93 Ind. 326; *Bright* v. *McOuat,* 40 Ind. 521. His private, personal and uncommunicated intention or purpose so to hold would not relieve him from obligation to the appellant as a tenant holding over.

If a tenant for a year or for a number of years holds over after the expiration of his term by efflux of time, the landlord, at his option and against the will or intention of the tenant, may hold the latter liable as a tenant for another year. 18 Am. & Eng. Ency. of Law (2nd ed.), 405; Wood, Landl. & Ten. §13; *Burbank* v. *Dyer,* 54 Ind. 392; *Tolle* v. *Orth,* 75 Ind. 298, 39 Am. Rep. 147; *New York, etc., R. Co.* v. *Randall,* 102 Ind. 453; *Bollenbacker* v. *Fritts,* 98 Ind. 50; *Harry* v. *Harry,* 127 Ind. 91; *McNatt* v. *Grange Hall Assn.,* 2 Ind. App. 341; *Kleespies* v. *McKenzie,* 12 Ind. App. 404.

In the absence of any cause which might properly be called compulsion or necessity, and where there is no special agreement, the tenant holding over can not be heard to say that his remaining in the occupancy of the premises was not purposed on his part or with an intent to hold over. He has no option in the matter; the option is with the landlord. See *Mason* v. *Wierengo*, 113 Mich. 151, 71 N. W. 489, 67 Am. St. 461; *Wood* v. *Gordon*, 18 N. Y. Supp. 109; *Haynes* v. *Aldrich*, 133 N. Y. 287, 28 Am. St. 636; *Frost* v. *Akron Iron Co.*, 12 Misc. (N. Y.) 348, 33 N. Y. Supp. 654.

The judgment is reversed, and the cause is remanded for a new trial.