F. O. STONE and STONE-BRADY, INC., v. BARNS-JACKSON COMPANY, INC.

176 So. 767.
Opinion Filed November 4, 1937.

*Hudson & Cason,* and *G. M. McNutt,* for Appellants;
*Marion E. Sibley* and *Robert F. Louys,* for Appellee.

BUFORD, J.—Appellants filed suit against the appellee and in the amended bill of complaint alleged that the appellee had agreed to lease the first and second floors of a certain described building in Miami, Florida, to the appellants under terms and conditions for a period of three years and that the appellee had failed and refused to execute lease in accordance with the agreement.

It was alleged that under the agreement of lease appellants had gone into possesson of the first and second floors of the building referred to and had at all times without default paid the rents due.

The agreement relied upon was evidenced by two telegrams, the first of which was in the following language:

"June 15, 1935.

"T. T. Ansberry,
"Bethlehem, New Hampshire.

"READY TO PAY TO YOUR AGENT PHILIP HEAD SIX HUNDRED DOLLARS PAYMENT IN FULL ONE YEARS RENT TO JULY FIRST NINETEEN THIRTY SIX ON SECOND FLOOR AT THIRTY NINE NORTHEAST FIRST AVENUE STOP THIS PAYMENT WILL BE MADE WITH UNDERSTANDING THAT BRADY

IS TO SURRENDER PRESENT LEASE ON FIRST FLOOR AND NEW LEASE IS TO BE EXECUTED ON BOTH FLOORS TO STONE BRADY INC A CORPORATION IN PROCESS OF FORMATION FOR PERIOD OF THREE YEARS AT RENTAL ON FIRST FLOOR AS PROVIDED FOR IN BRADY LEASE AND ON SECOND FLOOR AT SIX HUNDRED PER YEAR PAYABLE MONTHLY IN ADVANCE FOR SECOND AND THIRD YEARS AND OPTION TO RENEW FOR ADDITIONAL PERIOD OF TWO YEARS AT THIRTY ONE HUNDRED PER YEAR ON FIRST FLOOR AND SIX HUNDRED PER YEAR ON SECOND FLOOR PROVIDED WRITTEN NOTICE OF EXERCISE OF OPTION IS GIVEN TO YOU WITHIN SIXTY DAYS OF EXPIRATION OF THREE YEAR TERM STOP LEASE TO BE IN USUAL FORM CUSTOMARILY USED IN MIAMI AND TO CONTAIN PROVISION PERMITTING LESSEE TO REMOVE FIXTURES AND EQUIPMENT AND INCLUDING MACHINERY IN CONNECTION WITH AIRCONDITIONING STOP HEAD SAYS THIS WILL BE SATISFACTORY TO YOU STOP IF SO PLEASE WIRE APPROVAL SINCE IT IS OUR PLANS TO PROCEED IMMEDIATELY WITH CONTRACTS ON IMPROVEMENTS TO PROPERTY WITHOUT WAITING FOR FORMAL EXECUTION OF LEASES        "F. O. STONE."

To the telegram above quoted T. T. Ansberry, who is alleged to have been the President of appellee corporation, replied as follows:

"1935 Jun 15 PM 6 09
"Bethlehem NHAMP 15 5 5 47P
"F. D. Stone
"Care Philip Head, Miami Flo
"WIRE RECEIVED SATISFACTORY TO ME PROVIDING YOU PAY THE SIX HUNDRED DOLLARS INTO THE FIRST TRUST AND SAVINGS BANK MONDAY HEAD WILL UNDERSTAND THIS        "T T Ansberry"

The eighth and ninth paragraphs of the bill of complaint are as follows:

"The plaintiff, Stone-Brady, Inc., has repeatedly demanded of the defendant, Barnes-Jackson Company, Inc., a lease in the usual form customarily used in Miami, in accordance with the terms and provisions of the agreement as above stated, but, notwithstanding the fact that the defendant, Barnes-Jackson Company, Inc., has received and accepted from Stone-Brady, Inc., the rent called for by said agreement and notwithstanding the continued possession of the premises by the plaintiff, Stone-Brady, Inc., for more than one year under said agreement, the defendant, Barnes-Jackson Company, Inc., has refused, and still refuses, to execute and deliver to the plaintiff, Stone-Brady, Inc., such a lease as was contemplated by the agreement hereinabove stated, that is to say, a lease in the usual form used in Miami covering the premises for the period of time agreed upon.

"9. The plaintiffs allege that there are in general use in Miami, Florida, two printed forms of leases, one of which is customarily used when the property to be leased consists of tenements or offices. A copy of said form is herewith attached and made a part hereof, marked "Plaintiffs Exhibit No. 2.' The other form is customarily used when the property is other than tenements or offices, and a copy of said latter form is herewith attached and made a part hereof, marked 'Plaintiffs Exhibit No. 3.' The plaintiffs are willing, and do hereby agree, to accept a lease from the defendant, executed in either of said forms."

On motion timely made, bill of complaint was dismissed and from that order appeal is taken.

The bill of complaint is not without equity. Therefore, it was error to dismiss the same.

The prayer of the bill was that the defendant be required to execute and deliver to the plaintiff a lease "in the usual form customarily used in Miami" or that the final decree may be considered and treated as such in the event of the failure or refusal of the defendant to execute and deliver such lease or that the Court appoint a Special Master to execute such lease to the complainant and that the defendant be compelled to otherwise specifically perform the contract with the complainant. That a parol contract for lease may be enforced by a court of equity cannot be seriously questioned. See General Motors Acceptance Corporation v. Lynch Building Corporation, 118 Fla. 2, 159 Sou. 785; Hotel Halcyon Corporation v. Miami Real Estate Co., 89 Fla. 156, 103 Sou. 403, and cases there cited.

It will be observed that the bill of complaint alleges that the complainants are entitled to have a decree requiring the execution of a lease "in the usual form customarily used in Miami." The appellants contend that the appellee is bound by acceptance of the proposal in the telegram of June 15th to execute a lease "in usual form customarily used in Miami" and that to do so it must execute a lease containing the provision that "said lessor will during the continuance of said term keep all the external parts of the premises in good repair," and it appears to have been upon this theory of the appellants' contention that the bill of complaint was dismissed. The contention of the appellants in this regard is not tenable. The langauge used, "in the usual form customarily used in Miami" is not equivalent to the language, "under the usual terms customarily used in Miami." The salient terms of the lease to be acquired were specifically mentioned in the telegram. The words "in usual form" did not bind the lessor to agree to terms which were not mentioned in the telegram. The appellants are entitled to

have a lease executed in such form as may be customarily used in Miami and to embrace the terms offered and accepted by the respective telegrams. But, we hold that the lessor, by agreeing to execute a lease in the form customarily used in Miami should not be construed to become thereby bound to execute a lease containing all the terms and conditions which might be found customarily contained in leases used in Miami. To hold this would make the agreement one so uncertain that specific performance could not be enforced. This would be a matter upon which the parties to the contract had not had a meeting of the minds. The form of the lease is a matter to be determined largely by the application of the law in regard to such matters. The terms of the lease are matters to be agreed upon between the parties to the lease.

For the reasons stated, the order appealed from is reversed with directions that the cause be remanded for further proceedings not inconsistent with the views herein expressed.

So ordered.

ELLIS, C. J., and TERRELL, J., concur.

WHITFIELD, P. J., and BROWN and CHAPMAN, J. J., concur in the opinion and judgment.