THE G. S. SUPPIGER COMPANY *v.* SUMMIT GAS AND
WATER COMPANY

[No. 17,835.  Filed March 1, 1949.]

104

*Waldo C. Ging,* of Greenfield; and *Alvin C. Johnson,* of Indianapolis, for appellant.

*Ruckelshaus, Reilly, Rhetts & O'Connor,* of Indianapolis; and *Samuel J. Offutt,* of Greenfield, for appellee.

DRAPER, J.—The appellant operates a canning factory in the town of Mt. Summit. In connection therewith it pumps water from two wells on its premises. The appellee is a public utility which distributes gas and water to the town and citizens of Mt. Summit. It has no facilities for producing water, but it owns a dwelling house adjacent to the appellant's factory.

The appellant needed the house for the use of its superintendent and the appellee needed water for distribution to its patrons. On May 19, 1941, they agreed as follows:

"The G. S. Suppiger Company,   "May 19, 1941
1530 Hadley Street,
St. Louis, Missouri.
Gentlemen:

"Respecting the arrangement whereby The G. S. Suppiger Company is to furnish water to the Summit Gas & Water Company, we have agreed this day between us that the Summit Gas & Water Company will execute to you a lease of the resident premises adjacent to your plant, which premises are well known to both of us, the said lease to be

effective as of the first day of June, 1941, for a term of five years with an option to renew for an equal term of five years providing that your company is still operating the canning plant at Mt. Summit.

"As consideration and rental for this lease you are to furnish to the Summit Gas & Water Company its normal supply of water, for the duration of the lease and its extension. By 'normal' is meant the average supply of water as used by the domestic consumers and by the city over the past three years and you shall not be held liable for failure of supply for the two wells, now located on your premises, which are to be properly maintained. It is contemplated that this is a temporary agreement to be replaced by a formal lease as soon as same can be prepared by my attorney.

"Yours very truly,
SUMMIT GAS & WATER COMPANY
By A. B. Ayres (Signed)
A. B. Ayres, President

"Accepted by:
G. S. Suppiger Company
By. Herbert H. Droste (Signed)
H. H. Droste, Secy-Treas."

Pursuant to that agreement, which was never replaced by a more formal lease, the appellant occupied the house and furnished water to the appellee for distribution to its patrons. On or about April 13, 1946, appellee's president informed appellant's secretary that the appellee intended to renew the contract or agreement. The appellant's secretary said he wanted to think about the matter. Two days later the appellant notified the appellee in writing that it would not exercise its option to renew the lease on the house, and requested appellee to provide itself with water from some other source.

Thereafter the appellant's superintendent continued to occupy the house and the appellant continued to furnish water to the appellee as before. On January 13,

1947, the appellant filed its complaint for a declaratory judgment under Ch. 81, Acts of 1927, Burns' 1946 Replacement, § 3-1101 et seq. to determine the rights and obligations of the parties under the agreement.

After hearing the evidence the court made the following entry:

"The Court having heard the evidence and being duly advised in the premises finds:

"(1) That defendant company in May, 1941, leased the premises, referred to in plaintiff's complaint, to the plaintiff company for a period of 5 years—beginning on the 1st day of June, 1941.

"(2) That the lease provided, among other things, that the plaintiff should have the option to renew said lease for an additional term of five years.

"(3) That as a consideration for said lease the plaintiff agreed to furnish a normal supply of water to said defendant company—for its consumers in Mt. Summit, Indiana—but said plaintiff should not be held liable for any failure of the water from their wells.

"(4) That the original lease would have expired on May 31, 1946.

".(5) That plaintiff and defendant have been operating under said lease since the 1st day of June, 1941, to and including the present time; that said original lease has been, by the parties hereto, extended for an additional period of five years from the 1st day of June, 1946, to the 31st day of May, 1951.

"Judgment on the finding that the original lease entered into between plaintiff and defendant was extended by the parties for an additional period of 5 years and that said lease will terminate on the 31st day of May, 1951."

The appellant challenges the finding and judgment of the trial court.

No particular phraseology is necessary to the creation of a lease. Any instrument otherwise sufficient,

whereby a right of possession as a tenant is given pursuant to the agreement of the parties, is sufficient. *National Mfg., etc., Co.* v. *Farmers, etc., Bank* (1933), 204 Ind. 535, 185 N. E. 146. We think the court properly found the agreement to be a lease of the dwelling house.

As found by the court, the lease was one for five years beginning on June 1, 1941, and it gave the appellant the option to renew said lease for an additional term of five years. The appellee insists the agreement provided for an extension for a certain time or that it gave either party the right to renew, but we think not. It is sometimes difficult to determine whether a provision in a lease is one for extension or one for renewal. In doubtful cases the intention of the parties as disclosed by the whole instrument and the parties own interpretation and practical construction thereof governs. 51 C. J. S., § 54, p. 594. In this case we think the agreement clearly gives the lessee the option to renew for a period of five years. If there were any uncertainty in the provision, it would be construed most strongly against the landlord. 32 Am. Jur., § 962, p. 809; III *Thompson on Real Property*, § 1263, p. 358 (Perm. Ed.). If such a provision does not say at whose option the lease may be renewed, it will be considered as being renewable at the option of the tenant. 51 C. J. S., § 58, p. 601; *Glenn* v. *Bacon* (1927), 86 Cal. App. 58, 260 Pac. 559.

Under an option to renew running to the lessee he may elect to renew or surrender the premises. The landlord cannot require him to renew. 51 C. J. S., § 56, p. 595; 32 Am. Jur., § 960, p. 808; III *Thompson on Real Property*, § 1266, p. 369 (Perm. Ed.).

Where a lease provides for an *extension for a cer-*

*tain time* after the expiration of the agreed term, a mere holding over by the tenant will generally ▇ be taken as an election to hold for the additional term, but where the lease gives the tenant an *option for a renewal*, the lessee must, in the absence of unusual circumstances, indicate an election to renew by some affirmative action taken before the expiration of the current term. Merely holding over after the expiration of the term does not amount to an election to renew the lease for a like term. *Thurston* v. *F. W. Woolworth Co.* (1917), 66 Ind. App. 26, 117 N. E. 686; *Thiebaud et al.* v. *The First National Bank of Vevay* (1873), 42 Ind. 212; *Barnett* v. *Feary* (1885), 101 Ind. 95; *Crystal Ice Co.* v. *Morris* (1903), 160 Ind. 651, 67 N. E. 502; *Alleman* v. *Vink* (1902), 28 Ind. App. 142, 62 N. E. 461. See also *Marcus* v. *Calumet Breweries, Inc.* (1947), 117 Ind. App. 603, 73 N. E. 2d 351.

In this case the appellant did not indicate an intention to renew. On the contrary it notified the appellee it would not renew. We therefore think the appellant ▇ pellant became a tenant from year to year (see authorities last above cited) and the court erred in holding the original lease was extended for an additional period of 5 years and that it will terminate on May 31, 1951. The cases cited by the appellee, such as *Montgomery* v. *The Board of Commissioners of Hamilton County* (1881), 76 Ind. 362, and *Gordon* v. *Tennant, Admx.* (1940), 108 Ind. App. 326, 26 N. E. 2d 559, recognize the rules above stated. A different result was reached in those cases because the leases in those cases were held to provide for extensions rather than renewals.

Burns' 1946 Replacement, § 3-1106 provides that the court *may* refuse to render a declaratory judgment or

decree where such, if rendered, would not terminate the uncertainty or controversy giving rise to the proceeding. Although the appellee raised no such question below, it having merely asserted by its answer that the agreement constituted a lease which had been renewed for five years, it now for the first time insists that the Public Service Commission has sole jurisdiction to determine the question presented because, it says, the appellant is a public utility as defined by our statutes, and only the Public Service Commission would ultimately have the right to determine "whether the appellant could cut off the water supply in question."

The appellee further insists the town of Mt. Summit would be vitally affected by a declaration of the rights of the parties in this case because it presently has no other available water supply and it, therefore, should have been made a party defendant to this action under the provisions of Burns' 1946 Replacement, § 3-1111.

Thus the appellee, having been awarded the favorable decision which it sought below, seems to suggest additional ground for reversing the judgment appealed from and to join in the appellant's effort to have the same reversed. Ignoring any procedural questions implicit in that suggestion, however, and passing to the merits, it should be remembered that § 3-1106 is permissive. In this case the trial court, a court of general jurisdiction, chose to and did render a judgment. The trial court did not undertake to determine whether the appellant was or was not a public utility, nor whether it has the right to cut off the water supply. It determined only the date to which the lease had been extended by the conduct of the parties. We think the Circuit Court had the right to construe the lease in that particular.

Appellant's assertion in regard to the defect of parties defendant was not raised by demurrer or answer. It was therefore waived. Burns' 1946 Replacement, § 2-1011. Moreover, neither the town nor the citizens thereof could be harmed by the declaration for "no declaration shall prejudice the rights of persons not parties to the proceedings." Burns' 1946 Replacement, § 3-1111.

Judgment reversed and cause remanded with instructions to sustain appellant's motion for new trial.

Royse, P. J., concurs in result with opinion in which Martin, J., concurs.

NOTE.—Reported in 84 N. E. 2d 207.


CONCURRING OPINION

ROYSE, P. J.—I agree that the judgment of the trial court should be reversed. However, I reach this conclusion from different and opposite reasoning from that of the majority. In their opinion it is stated:

> "Although the appellee raised no such question below, it having merely asserted by its answer that the agreement constituted a lease which had been renewed for five years, it now for the first time insists that the Public Service Commission has sole jurisdiction to determine the question presented because, it says, the appellant is a public utility as defined by our statutes, and only the Public Service Commission would ultimately have the right to determine 'whether the appellant could cut off the water supply in question.'"

I am of the opinion the question of whether appellant was a public utility was presented to the court below by the contract, the pleadings and the evidence.

Rhetorical Paragraphs V, VI and VII of appellant's complaint are as follows:

"V. That the plaintiff has repeatedly notified the defendant orally that its water supply is inadequate for its own use and that it would no longer be able to furnish water to the defendant, and has repeatedly asked that defendant arrange for its own water supply so that it may use its supply of water for its own exclusive use.

"VI. That the plaintiff is still furnishing water to the defendant but threatens to and will cut off the supply of water, and asks for a determination of its rights under its agreement with the defendant, which the defendant alleges is still in force and effect.

"VII. Plaintiff avers that the defendant's failure to arrange for its own water supply still exists and the plaintiff desires to have determined the rights and duties of plaintiff and of defendant, under said contract, as stated in plaintiff's 'Exhibit A,' and to have the court interpret and declare the true meaning of said contract in the following respect. Under the terms and provisions of said contract does an obligation rest upon the plaintiff to furnish water to the defendant, and is said contract fully performed and terminated?"

Rhetorical Paragraph 3 of appellee's answer is as follows:

"3. That the defendant denies the allegations set forth in Paragraphs IV, V, VI, VII, and VIII, except that the defendant admits that the plaintiff has heretofore furnished water to the defendant, but the defendant furthermore contends that said lease set forth as a part of Plaintiff's complaint was renewed for a term of five years, beginning June 1, 1946."

The evidence shows appellee was a public utility operating under the Public Service Commission; that appellant did not have a permit from that Commission.

Our statutes have defined the terms "public utility," "service" and "utility." Section 54-105, Burns' 1933 (1947 Supp.), provides, in part, as follows:

"The term 'public utility' as used in this act shall mean and embrace every corporation, company, individual, association of individuals, their lessees, trustees, or receivers appointed by any court whatsoever, that now or hereafter may own, operate, manage or control any street railway or interurban railway or any plant or equipment within the state for the conveyance of telegraph or telephone messages, *or for the production, transmission, delivery or furnishings of heat, light, water or power,* or for the furnishing of elevator or warehouse service *either directly or indirectly to or for the public,* but said term shall not include a municipality that may now or hereafter acquire, own, or operate any of the foregoing facilities."

"The term 'service' is used in this act in its broadest and most inclusive sense and includes not only the use or accommodation afforded consumers or patrons but also any product or commodity furnished by any public or other utility and the plant, equipment, apparatus, appliances, property and facility employed by any public or other utility in performing any service or in furnishing any product or commodity and devoted to the purposes in which such public or other utility is engaged and to the use and accommodation of the public."

"The term 'utility' as used in this act shall mean every street railway or interurban railway, and every plant or equipment within the state used for the conveyance of telegraph and telephone messages, or for the production, transmission, delivery, *or furnishing of heat, light, water or power,* or for the furnishing of elevator or warehouse service, *either directly or indirectly to the public."* (My emphasis).

The provisions of the contract herein, to my mind, bring appellant squarely within the foregoing definitions of a "public utility" and a "utility."

In the case of *Public Service Commission et al.* v. *Panhandle Eastern Pipeline Company* (1947), 224 Ind. 662, 71 N. E. 2d 117, the Supreme Court, in considering the question of whether the appellee in that case was a public utility, after quoting the first portion of the statute set out above, said, in part (pp. 685, 686):

> "The bottom question on this phase of the case is whether the appellee is furnishing gas in Indiana directly or indirectly to or for the public. Admittedly it is selling gas in Indiana indirectly to and for the public through distributing companies and that makes it a public utility under the Indiana statute, subject to regulation and control by the Indiana Public Service Commission."

In this case the contract clearly indicated its sole intent and purpose was to induce appellant to furnish and deliver water to appellee to be used by said appellee in serving the public. The evidence at the trial is undisputed that appellee is a public utility supplying water to the people of Mt. Summit, to the school building, and eight fire hydrants. This water is supplied exclusively by appellant.

Section 54-509, Burns' 1933 (1947 Supp.), provides, in part, as follows:

> "No public utility, as defined in section one (§ 54-105) of this act, shall sell, assign, transfer, lease, or encumber its franchise, works or system to any other person, partnership or corporation, or contract for the operation of any part of its works or system by any other person, partnership or corporation, without the approval of the commission after hearing. . . . It shall be lawful, however, for any utility to make a contract for service to or from another utility at rates previously filed with and approved by the public service commission and in force."

I am of the opinion this provision of the Public Service Commission Act places contracts of the kind involved here under the control of the Public Service Commission. Any such contract not made in accord with this provision is illegal and invalid. Otherwise such contracts could afford an effective means of circumventing the clear and positive legislative intent expressed in the Act.

I recognize the Hancock Circuit Court is a court of general jurisdiction. Under the Uniform Declaratory Judgments Act it has jurisdiction to interpret and construe valid contracts, including contracts between public utilities. However, I do not believe that court has authority under the last mentioned Act to contrue invalid contracts. Therefore, I do not believe the trial court had jurisdiction of the particular subject-matter of this litigation.

MARTIN, J.—Concurs.

NOTE.—Reported in 84 N. E. 2d 207.