Florence Lustig CROSSMAN, a/k/a Florence Lustig, Trading and doing business as Florence Lustig, Appellant,

v.

FONTAINEBLEAU HOTEL CORP., Appellee.

No. 18105.

United States Court of Appeals Fifth Circuit.

Dec. 18, 1959.

8. In view of this holding we consider it unnecessary to discuss the question of indispensable parties.

Robert C. Ward, Miami, Fla., for appellant.

Richard P. Kenney, Miami, Fla., for appellee.

Before RIVES, Chief Judge, and HUTCHESON and WISDOM, Circuit Judges.

WISDOM, Circuit Judge.

The plaintiff-appellant, Florence Lustig Crossman, operates women's dress shops in Miami Beach, Palm Beach, and Bal Harbour, Florida, in New York City, and in other places. The defendant-appellee is the Fontainebleau Hotel Corporation of Miami, Florida. The Fontainebleau Hotel opened for business in December 1954.

Lustig filed suit for a declaratory judgment against Fontainebleau October 19, 1959, in the Southern District of Florida asserting that she was the assignee of a lessee's interest in a lease for shop space in the hotel, and that the lease had a renewal clause. She attached to the complaint a long, unsigned, and unwitnessed writing, said to represent the lease. The complaint seeks to enjoin any unlawful detainer or dispossessory action in the state courts of Florida to oust her from possession of the premises pending a determination of her rights.

Fontainebleau Hotel moved to dismiss on the ground that the lease was not executed in compliance with the Florida Statute of Frauds. In reply, Lustig contends that possession, payment of the rent, and expenditure of $50,000 for improvements take the contract out of the Statute of Frauds. The district court granted the motion to dismiss for failure to state a claim entitling the plaintiff to relief, and Lustig appeals from the order of dismissal.

After suit was instituted, but before the order of dismissal was submitted, the hotel brought a dispossessory proceeding in a Florida court to oust Lustig as a tenant holding over beyond her term. The Florida court determined that the federal order of dismissal was res judicata and ordered Lustig evicted. Lustig then asked for an injunction to stay the execution of the state court judgment.

The matter came before us for oral argument on appellant's application for an injunction to stay the state proceeding. The entire record being before us, however, at the request of the Court, in order to expedite decision of the case on the merits before determining the propriety of the injunction against a state court, counsel for both sides agreed to argue the merits of the appeal from the order of dismissal. The Court is of the view that the judgment should be reversed and the case remanded.

I.

The complaint alleges the following facts.

January, 1955, about a month after the Fontainebleau Hotel opened, Florence Lustig and her husband, Crossman, who

was also her manager, were staying at the hotel. They were approached by a Mr. Ben Jaffe, an officer, director, and large stockholder of the hotel, who was handling the leasing of store space in the hotel. Jaffe told Lustig that the lower lobby, where all of the shops were to be located, had not been completed and that the management was anxious to have tenants in promptly; it was the height of the season in Florida. Jaffe, Lustig, and Crossman agreed orally on the terms of a lease. Then, in order to expedite the opening of the shopping area in the Fontainebleau, so that the hotel guests would have the benefit of complete facilities, at Jaffe's request Lustig agreed to move in immediately and to take possession of the premises for the operation of a fine dress shop before formal execution of any lease. Based on the oral agreement and on Jaffe's assurances that all would be satisfactory, Lustig took possession of the premises. Using the hotel's architect and general contractor, she spent $50,000 on fixtures and improvements, a part of which was not removable. To bind the transaction Lustig gave the hotel $5,000 as a good faith deposit, an amount still held by the hotel.

After Lustig commenced construction of the improvements, the hotel presented a lease that allegedly was not in accordance with the original understanding of the parties. Lustig, through her husband, Crossman, and the hotel, through Jaffe, made pencilled corrections in the lease to reflect the original understanding. All of these changes were approved by Jaffe and Crossman. Jaffe then stated that the lease would be redelivered to the hotel's attorneys to be redrafted in accordance with the pencil notations. No redrafted lease was ever submitted to Lustig.

The lease shows the lessee to be Florence Lustig of New York, Inc., a New York corporation authorized to do business in Florida. The plaintiff is the sole stockholder, a director, and dominant party in that corporation. All of

the rights of the corporation in the lease were transferred to her. She has occupied the premises and paid the rent since March 1, 1955, when the shop opened as "Florence Lustig".

July 20, 1958, Lustig notified the lessor in writing of her election to exercise the option to renew the lease. In August 1958 the hotel's attorneys' letter to the corporation denied that there was any option to renew the lease. In July 1959 a letter from the hotel demanded possession of the premises no later than September 1, 1959. In September Lustig wrote the hotel tendering a check for $2,000 for the rent for the first month of the alleged new five-year term. The check was returned. The lessor again demanded possession of the premises, but extended the deadline for removal to October 31, 1959.

The face of the correspondence shows that the hotel addressed its letters to Florence Lustig, Inc. There are, however, references to Florence Lustig individually as the tenant. The record does not disclose how the letters from the lessee to the hotel were signed.

Florence Lustig alleges that she took possession of the leased premises and paid the rent. The shop was operated under her name. Prior to raising the issue of an alleged invalid assignment, as a defense in this case, the hotel had done nothing to indicate disapproval of Florence Lustig as a tenant.

The Florida Statute of Frauds provides:

"No estate or interest of freehold, or for a term of more than one year, or any uncertain interest of, in or out of any messages, lands, tenements or hereditaments shall be created, made, granted, transferred or released in any other manner than by instrument in writing, signed in the presence of two subscribing witnesses by the party creating, making, granting, conveying, transferring or releasing such estate, interest, or term of more than one year * * *." F.S.A. § 689.01

■ A statute of frauds makes no exception in favor of a plaintiff who has rendered his own performance in part or in full. But by a course of judicial development, it has become established law for equity courts to hold the statute inapplicable when a contracting party has partially performed his share of the bargain. Corbin states the general principle as follows: "Nevertheless, it is established law that, after certain kinds of part performance by a purchaser, the court will specifically enforce the vendor's promise to convey land. * * * Part performance of a contract for the transfer of land does not take the case out of the statute; but it may be of such a character that it will take the statute out of the case. * * * The part performance doctrine applies to a contract for * * * any of the lesser interests in land; and cases are numerous in which it has been applied to oral leases of land, even though they are for so long a period as to be clearly within the one-year clause of the statute as well as within the land clause." 2 Corbin, Contracts § 420 (1950).

The lessee concedes that the writing relied on here does not meet the formal requirements called for in the statute for a valid five-year lease. She contends that possession as lessee for five years, coupled with payment of the rent for that time and expenditures for substantial improvements she made on the premises, take the agreement out of the statute and give her the right to specific performance according to the *provable* terms of her contract. She contends also that the option to renew for five years set out in the instrument is a valid option enforceable, as are all the other terms of the contract, by a court of equity.

Reed v. Moore, 1926, 91 Fla. 900, 109 So. 86, 88, involved a set of facts similar to those the instant case presents. The lease was for a term of five years with an option to renew for a further term of five years. The lease did not meet the requirements of the Statute of Frauds since it was attested by only one witness. The original lessees executed an assignment of their interest in the lease in compliance with the Statute. The first assignee then assigned to an oil company, which assigned to the appellant Reed. The case, as reported, does not indicate whether the second and third assignments complied with the Statute. The lessor sold the land to the appellee, Moore, who demanded possession of the leased premises. Reed, the lessee, brought an action to enforce the lease on the premises. The court granted relief stating:

"While the lease attested by only one witness was not effectual as an executed conveyance of the term, it was effectual as a contract to lease, and the lessee having possession under the contract may have specific performance; no forfeiture being shown. * * * The assignments to the successive assignees were at least in equity sufficient to pass the interest in the contract to lease, and the grantee, A. B. Moore, took the title subject to the contract to lease and accepted rents from the assignee in possession under the contract to lease; therefore such assignee is entitled to specific performance of the contract against the grantee of the fee-simple title, and is entitled also to appropriate incidental relief. * * * *"

In regard to the option to renew, the court said, "Like principles apply to the contract to renew the lease".[1]

■ Under Florida law as expressed in Reed v. Moore, therefore, a lease in-

---

1. In G. S. Suppiger Co. v. Summit Gas & Water Co., 1949, 119 Ind.App. 102, 84 N.E.2d 207, 209, there was an agreement to lease for a term of five years with an option to renew for five years. The agreement was never put in the form of a formal lease, but the lessee occupied the premises and performed his part of the agreement. The court, without any discussion of the Statute of Frauds held that "the agreement clearly gives the lessee the option to renew for a period of five years."

valid because of the Statute of Frauds will be enforced in equity, if the lessee has taken possession in reliance upon the instrument. Similar principles apply to an option to renew contained in such an instrument.

▮ The lessor in this case seeks to avoid the effect of the Reed case by arguing there were valid assignments in that case whereas in the instant case the assignment from the corporation to Florence Lustig did not comply with the requirements of the Statute. It is not clear whether the second and third assignments in the Reed case complied with the Statute. Assuming that they did, this does not lessen the effect of the Florida holding on the present case. An assignee has no greater rights than his assignor; consequently, it cannot be argued that a valid assignment may breathe life into the assigned instrument otherwise invalid.

We believe that Reed v. Moore controls the disposition of the present case. It does not represent an isolated example in Florida law. In Pedrick v. Vidal, 1928, 95 Fla. 952, 116 So. 857, Vidal and another agreed to buy a grocery business from Bush if they could secure a five-year lease from the owner of the building, Pedrick. Pedrick agreed to execute and deliver a lease. Vidal and his partner bought the business, went into possession, spent $500 on improvements and $1500 for additional equipment, all with the knowledge of Pedrick. They remained in possession and complied with the terms of the agreement. Pedrick refused to execute the lease and notified them to vacate. The court granted the lessees specific performance of the agreement to execute the lease, stating that usually possession and payment are sufficient to show the lessee's performance but that the payment for the improvements strengthened the lessee's claim to equitable relief.[2] There was no option in the Pedrick case.

In Stone v. Barnes-Jackson Co., 1937, 129 Fla. 816, 176 So. 767, the lessee relied upon two telegrams as setting forth the terms of an agreement to lease the first and second floors of a building. The term was three years with an option to renew for an additional period of two years. The lease was to be "in usual form customarily used in Miami". The lessee occupied the premises for more than one year and paid the rent in accordance with the terms and provisions of the agreement. The owner refused to execute the lease. The trial court dismissed the lessee's complaint, but the Supreme Court reversed, saying that it could not be seriously questioned that a parol contract for lease may be enforced by a court of equity. The case turned on the question of what kind of lease was required by the agreement that it be "in usual form customarily used in Miami". The validity of the provision giving the lessee the right to renew was not questioned; it was a term of the agreement, however, and the lessee was granted specific performance of the agreement.

Other Florida cases are in agreement that part performance takes the case out of the Statute of Frauds and allows specific performance of an oral lease or an instrument not in conformity with the Statute. General Motors Acceptance Corp. v. Lynch Bldg. Corp., 1935, 118 Fla. 2, 159 So. 785; Hotel Halcyon Corp. v. Miami Real Estate Co., Fla., 1925, 89 Fla. 156, 103 So. 403; Miami Real Estate Co. v. Hotel Halcyon Corp., 98 Fla. 59,

---

**2.** "The great weight of authority is to the effect that a court of equity will specifically enforce an oral agreement for the execution of a lease of real estate when the lessee has been put into possession and has paid rent and the lessor has accepted it, under the terms agreed on, where such terms are clearly and definitely alleged and proven. In this case there was another element that strengthens the claim to equitable relief; that is, the making of improvements on the property with the lessor's knowledge and acquiescence. But the putting of the lessees in possession and acceptance of payment of rents as orally agreed on is usually sufficient to take the case out of the statute of frauds. (Extensive case citations omitted)." Pedrick v. Vidal, 1928, 95 Fla. 952, 116 So. 857.

123 So. 1; cf. Gill v. Livingston, 1947, 158 Fla. 577, 29 So.2d 631.

Similarly, a number of Florida cases hold that part performance will take a contract to sell land out of the Statute of Frauds and entitle the performing party to specific performance. Tate's Adm'r v. Jones's Ex'r, 1877, 16 Fla. 216; Maloy v. Boyett, 1909, 53 Fla. 956, 43 So. 243; Golson v. Boyett, 59 Fla. 510, 52 So. 141; Taylor v. Mathews, 1907, 53 Fla. 776, 44 So. 146; Demps v. Hogan, 1909, 57 Fla. 60, 48 So. 998; Hogans v. Demps, 63 Fla. 177, 58 So. 33. The considerations allowing equitable relief to a person who has taken possession and partly performed under a contract to sell land that is invalidly executed are equally applicable in a lease situation.

The lessor in this case relies on this Court's decision in Minsky's Follies of Florida v. Sennes, 5 Cir., 1953, 206 F.2d 1. In that case the parties had an oral agreement to enter into a lease for three years. No option to renew was involved. The formal lease required by the Florida Statute of Frauds was never executed, but in reliance on the oral agreement the lessor procured a liquor license for the leased premises, employed a watchman for the premises, retained counsel to draft a lease, and incurred other incidental expenses. The lessor brought an action at law to recover damages for breach of the oral agreement. This Court denied recovery on the ground that the agreement to lease did not comply with the Statute of Frauds. In Minsky, however, as we pointed out, there was no possession or part performance sufficient to take the case out of the Statute. Unlike the instant case, Minsky never had possession and had paid no rent.

We have considered the other cases the lessor relies on and find them distinguishable from the instant case.[3]

■ The lessor contends that an option to renew is an inchoate offer until accepted and after acceptance the renewal is a separate contract unenforceable because it is not in compliance with the Statute or because there was no part performance in reliance on the option or referable to the option. We have found no Florida decisions passing directly on this point. No Florida case interprets the option as severable and the renewal as a separate contract.[4] We construe the option provision as no different from any other provision of a lease carrying a promise of the lessor to act conditioned on performance by the lessee. The courts

3. In Camichos v. Diana Stores Corp., 1946, 157 Fla. 349, 25 So.2d 864, 865, the option was unenforceable because the rental and term were "to be agreed upon by the parties." The inclusion of this phrase in the agreement indicates the parties contemplated a further agreement. In the absence of such a clause the parties are presumed to have contemplated the same terms and conditions of the original agreement. In Shaw Brothers Oil Co. v. Parrish, Fla. 1958, 99 So.2d 610, 611, a sub-lessee granted an option to extend for five years "at a rental to be mutually agreed upon at a later time." The sub-lessee had been in possession for three years of the five year renewal. The court said that the Camichos case was not dispositive of the question of whether a lessor could validly refuse to comply with an agreement to extend a lease for a definite term where the amount of the rental for the extended term is to be fixed by future agreement of the parties. The court left the question open, but en-forced the sub-lessees right in equity to continue his possession for two more years. The case does not help the lessor's argument. If anything, it shows that an option to renew will be protected by the Florida courts when the lessee is in possession in reliance upon the option. The court in F&M Schaefer Brewing Co. v. Beauchamp, Fla.App.1958, 101 F.2d 398, denied relief to an option holder who had failed to exercise his option to purchase it in the time allowed because of his mistaken belief as to the expiration date of the lease. In the instant case, Florence Lustig exercised the option long before the expiration of the original five-year term.

4. See Camichos v. Diana Stores Corp., 1946, 157 Fla. 349, 25 So.2d 864; Stone v. Barnes-Jackson, Co., 1937, 129 Fla. 816, 176 So. 767; Reed v. Moore, 1926, 91 Fla. 900, 109 So. 86; Farmers' Bank & Trust Co. v. Palm Publishing Corp., 1923, 86 Fla. 371, 98 So. 143.

of other states hold that the option is a term in the lease or contract to lease.[5] This seems to be the majority view.[6] We believe it is the better view. It is consistent with general contract principles. If the option were a separate and distinct contract, it would have to be supported by consideration. As a part and parcel of the main agreement, it requires no separate consideration[7] and may be specifically enforced in equity as any other covenant of the contract is enforced.[8]

■■■ If the case is taken out of the Statute of Frauds by part performance of the lessee, then parol evidence is properly admissible to prove the terms of the agreement relied on by the lessee.[9] And if part performance will take the case out of the statute, a fortiori complete performance will do so—if at the trial the facts show that the primary term expired.[10] The terms of the option may be proved by parol evidence just like any other terms of the agreement. It is, therefore, no valid objection to argue

that the option is indefinite as to the amount to be paid, the manner of payment, deposit, time of exercise. Courts have said that when there are no terms stated in the option the parties contemplate that the lease will be renewed on the same terms in the original agreement.[11]

■■ The acts relied on to prove performance taking the case out of the statute must be referable, of course, to the contract. Miller v. Murray, Fla. 1953, 68 So.2d 594. As we see it, there is no great problem in referability. If the contract is treated as a whole, the possession, payment of rent, and expenditures for improvements referred to the contract as a whole. If the contract is treated as divisible, Lustig's letter exercising the option and her continued possession thereafter, are referable to the renewal as well as to the primary term. It is a fair inference also that the expenditure of as much as $50,000 for improvements was necessarily in contemplation of renewal of the lease.[12] If

5. An option to renew is part and parcel of the original lease. Krall v. Light, 240 Mo.App. 480, 210 S.W.2d 739; Montana Consolidated Mines Corp. v. O'Connell, 1938, 107 Mont. 273, 85 P.2d 345. But see McArthur v. Rosenbaum Co., 3 Cir., 1950, 180 F.2d 617, holding an option in a lease is a contract independent of the lease contract.

An option to purchase contained in a lease is an integral part of that lease and the contract in such lease is indivisible. Garlick v. Imgruet, 1930, 340 Ill. 136, 172 N.E. 164, cited in Hindu Incense Mfg. Co. v. MacKenzie, 1949, 403 Ill. 390, 86 N.E.2d 214.

6. 49 Am.Jur., Specific Performance § 122; 51 C.J.S. Landlord and Tenant § 56; 1 Corbin, Contracts §§ 29, 263 (1950). The lessor in this case states in a supplemental brief: "* * * [T]he option, if it can be called that, while certainly most incomplete in and of itself, nevertheless was *part and parcel of the* initial invalid lease." (emphasis supplied).

7. Krall v. Light, 1948, 240 Mo.App. 480, 210 S.W.2d 739.

8. Corbin cites a number of cases holding that an option to renew a lease will be enforced in equity. Corbin, Contracts § 269, p. 897, n. 97.

9. See 13 Fla.Jurisprudence, Evidence, Par. 393, p. 391, citing Chamberlain v. Lesley, 1897, 39 Fla. 452, 22 So. 736, Florida Moss Products Co. v. Leesburg, 1927, 93 Fla. 656, 112 So. 572; Bond v. Hewitt, 1933, 111 Fla. 180, 149 So. 606.

10. See Wells v. Waddell, 1921, 59 Mont. 436, 196 P. 1000.

11. Saunders v. Sasser, 1952, 86 Ga.App. 499, 71 S.E.2d 709; Miller v. Clemons, Ky.1955, 276 S.W.2d 650; Bruno v. McCabe, La.App.1954, 71 So.2d 245; Shannon v. Jacobson, 1928, 262 Mass. 463, 160 N.E. 245; Pelikan v. Spheeris, 1948, 252 Wis. 562, 32 N.W.2d 220; McAdam, Landlord and Tenant § 147 (5th ed. 1934): Taylor, Landlord and Tenant (1904) § 332; 32 Am.Jur., Landlord and Tenant § 965; 51 C.J.S., Landlord and Tenant § 71.

12. "Where one of the parties has acted on faith of the renewal covenant and placed himself in such position that he cannot be adequately compensated except by a renewal of the lease, a court of equity will secure to him his right and benefits under the renewal covenant, by some appropriate remedy, which, in most instances, is in effect very similar to a decree of specific performance." 32 Am.Jur., Landlord and Tenant § 965.

there is a serious question of referability, especially with regard to the renewal, it is better resolved at a trial on the merits than on a motion to dismiss.

### III.

■ The final argument of the lessor is that, assuming that there is a valid option, Florence Lustig is not entitled to exercise this option because the covenant in the lease prohibiting assignment without the lessor's written consent has been violated.[13] Whether the covenant against assignment was violated is a question of fact, subject to proof in a hearing on the merits of the case. On the face of the pleadings, and looking at the allegations in the light most favorable to the complainant, it appears that Florence Lustig as an individual and Florence Lustig, Inc. are inseparable— as far as being a lessee is concerned. For example, in the lessor's letter attached to the complaint, the letter was addressed to the corporation, but there are references to Florence Lustig individually as the lessee.[14] Clause F of the agreement was drawn to provide that unless certain persons continued to own 49% of the stock of the corporation, lack of such ownership constituted an assignment. Although the names of these persons were never inserted in the instrument, it is a fair inference that the lessor wanted to insure that Florence Lustig remain in control of the premises.

■ A covenant forbidding assignment without the lessor's consent may be waived by accepting rent from the assignee and permitting the assignee to remain in possession. The Florida Supreme Court has declared:[15]

"That a lessor, by accepting the benefits of a lease, after an assignment or subletting by the original lessee, and by a course of conduct reasonably susceptible of a construction that he acquiesces in the assignment or subletting of the leased premises, notwithstanding a covenant against an assignment or subletting, may be held to have waived the covenant and to be estopped from asserting a forfeiture because of its breach, is well established."

There is no evidence in this case as to who paid the rent. The shop was operated in the name of Florence Lustig. The petition alleges that she was in possession under the lease and that she paid the rent. Accepting the allegations in the petition as true, the lessor's course of conduct is reasonably susceptible of a construction that it acquiesced in the assignment.

■ Whether Florence Lustig and the corporation are one and whether the lessor has waived the covenant against assignment by accepting benefits from Florence Lustig are questions of proof to be resolved at a trial on the merits.

### IV.

■ A federal court may issue an injunction staying proceedings in a state court when necessary in aid of its jurisdiction, or to protect or effectuate its judgment. 28 U.S.C.A. § 2283; Jacksonville Blow Pipe Co. v. Reconstruction

---

13. It is clear that an option to renew a lease can be assigned without the lessor's consent in the absence of any covenant in the lease against assignment. Corbin, Contracts § 271 (1950).

14. "Reference is made to your letter of the same date which purported to exercise an option to renew a lease for five years whereby Florence Lustig, your client, would occupy space at the Fontainebleau Hotel. It appears from your letter that Miss Lustig is relying on a purported election or right to renew a lease with the Fontainebleau Hotel Corp. and it further appears that the short note from Florence Lustig of July 16, 1959, is also relied upon as having perfected such election or right. Your attention is invited to a letter of August 4, 1958, addressed to your client and transmitted by Registered Mail, under Registry Receipt No. 630317 whereby Florence Lustig was advised that she had no option to renew for any additional term. That situation remains unchanged to date."

15. Farmers' Bank & Trust Co. v. Palms Publishing Co., 1923, 86 Fla. 371, 98 So. 143, 144.

Finance Corp., 5 Cir., 1957, 244 F.2d 394; Southern California Petroleum Corp. v. Harper, 5 Cir., 1960, 273 F.2d 715. See also Rule 62(g), F.R.Civ.P., 28 U.S.C.A.

There are compelling reasons calling for the issuance of a temporary injunction in this case. The Florida court in ordering eviction determined that the federal court order dismissing the lessee's complaint was res judicata. Our reversal of the federal court's order of dismissal destroys the basis for the state court decision. The plaintiff's petition for a temporary injunction presents satisfactory proof of the irreparable damage she will suffer if the state court judgment is executed and she is evicted from the premises. If the plaintiff gives reasonable security in compliance with Rule 65(c), Federal Rules of Civil Procedure, in an amount to be prescribed by the district court, that court should issue a temporary injunction restraining the defendant from executing the state court eviction order until the case can be heard and determined on its merits.

The district court's order dismissing the complaint is Reversed and the case is Remanded for further proceedings not inconsistent with this opinion.

HUTCHESON, Circuit Judge (concurring specially).

I am of the firm opinion, for reasons which, because of the urgency of getting the opinion out, I do not take time to set down, that plaintiff's complaint did not state a cause of action. I concur, however, not in the opinion but in the reversal of the judgment for disposition on the merits on a trial, summary or otherwise.

This is, of course, not to say that, if plaintiff proves the matters alleged by her, she would be entitled to specific performance of the claimed option. I think she would not. It is to say only that an appeal to equity of the nature of that asserted here should ordinarily be disposed of on the facts rather than on the pleadings. Cf. Black v. First Nat. Bank, 5 Cir., 255 F.2d 373.