In re F.A.M.I. SERVICE SYSTEMS, INC., Debtor.

BRESLER MALLS, INC., a foreign corporation, Plaintiff,

v.

F.A.M.I. SERVICE SYSTEMS, INC., Defendant.

Bankruptcy No. 81–00675–BKC–SMW. Adv. No. 81–0613–BKC–SMW–A.

United States Bankruptcy Court, S. D. Florida.

April 6, 1982.

---

Robert E. Venney, Miami, Fla., for debtor.

John R. Kelso, Miami, Fla., for plaintiff.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

SIDNEY M. WEAVER, Bankruptcy Judge.

This Cause having come on to be heard upon a Complaint for Relief from Stay filed herein and the Court, having heard the testimony and examined the evidence presented; observed the candor and demeanor of the witnesses; considered the arguments of counsel and being otherwise fully advised in the premises, does hereby make the following findings of fact and conclusions of law:

The Court has jurisdiction over the parties and the subject matter of this action.

This matter began in the State Court when Bresler Malls, Inc., (hereinafter referred to as Bresler) a tenant in a shopping center, sued its subleasee, C.C.L., a Florida general partnership, and its three general partners seeking eviction of those defendants from an ice cream store within a shopping center and damages in connection therewith. The right of occupancy of the partnership and partners results from a written sublease agreement.

Shortly after commencement of the State Court action, Bresler was served with Notice of Bankruptcy and Automatic Stay referring to the bankruptcy proceedings in which F.A.M.I., Inc. is the debtor. Bresler subsequently filed this action to lift the automatic stay enabling it to proceed in its State Court action, urging the Court to note the distinction between the entities, C.C.L.

and its partners, (hereinafter referred to as C.C.L.) who entered into the sublease and F.A.M.I. Service Systems, Inc. (hereinafter referred to as the debtor). The debtor, on the other hand, alleges that C.C.L. and the debtor are one and the same and that the debtor is the real party in interest in the sublease agreement and as, such, should have the protection of the automatic stay. The debtor counterclaimed against Bresler and filed a third-party action against Bresler 33 Flavors (franchisor) urging injunctive relief against the State Court eviction proceedings and demanding declaratory relief with respect to the claimed identity of the debtor and C.C.L.

The issue presented for consideration here is whether the debtor and the sublessee are the same entity so that the debtor's automatic stay would extend to the eviction and related actions now pending in State Court. The Court finds that the two entities are not the same and thus the automatic stay on actions involving the debtor has no effect on the pending State Court action between Bresler and C.C.L.

In its defense to the Complaint, the debtor alleges that an effective assignment of the sublease was made from C.C.L. to the debtor. In the alternative, the debtor argues that the real tenant from the inception of the sublease was the debtor and not C.C.L.

■ Taking the alternative argument first, the Court finds that there is insufficient credible evidence to sustain the contention that the debtor was an original party to the sublease. It is alleged by the debtor that Bresler was aware at the time the sublease was commenced that the debtor corporation was, in fact, the party in interest. Bresler maintains to the contrary, that it is its policy to deal primarily with individuals and partnerships who can be held personally liable for debts incurred. Bresler asserts that they were following this policy when they sublet to C.C.L. The contradictory testimony educed at trial cannot overcome the direct evidence of the documents themselves. All sublease documents are signed by the partnership and

each partner in his individual capacity. The Court finds no basis to assume that Bresler knew it was dealing with the debtor at the inception of this arrangement.

■ The debtor further alleges that an assignment was effected whereby the debtor succeeded to C.C.L.'s interest in the agreements with Bresler. Under the terms of the sublease agreement, any assignment would require the written consent of Bresler to become effective. This written consent was never given nor was it requested. The law generally favors free alienation of property and under common law, a leasehold interest could be assigned by the tenant without the landlord's consent. *Fernandez v. Vazquez*, 397 So.2d 1171 (Fla. DCA 3, 1981). In order to protect the landlord, many leases expressly provide that the lease may not be assigned without the written consent of the landlord. Florida statutory law further provides that the assignment of an estate or interest in property for a term of more than one year may not be assigned unless by an instrument signed in the presence of two subscribing witnesses by the assignor or by legal agent, or by operation of law. *Florida Statute* Section 689.01. Such requirements were not present in the putative assignment.

■■ While the formalities of an assignment were not observed, Bresler did accept some payment of rent and capital improvements from the debtor. The debtor contends that by accepting these payments, Bresler has constructively consented to the assignment. Constructive assignment is a well founded legal principle as correctly pointed out by the debtor in its argument, but the facts of this case do not support a finding that the Bresler/C.C.L. sublease was constructively assigned to the debtor. Debtor cites the Fifth Circuit opinion in *Crossman v. Fontainebleau Hotel Corp.*, 273 F.2d 720 (5 Cir. 1959) for the proposition that an assignment can be valid notwithstanding the statute of frauds requirement of a writing if there has been part performance and the "lessor's course of conduct is reasonably susceptible of a construction that it acquiesced in the assignment." In

*Crossman*, the Fifth Circuit found that by accepting the benefits of the sublease in the form of rent payments from the assignee, the landlord could not withhold its consent to the assignment. The acceptance of rent payments from the "stranger" to the sublease constituted conduct reasonably susceptible of a construction that [the landlord] acquiesced to the assignment. In the case at bar, the conduct of Bresler is not so susceptible. The checks received by Bresler were from a variety of sources including the debtor and from some of the partners of C.C.L. personally. Correspondence to Bresler from the partners of C.C.L. bore various letterheads including F.A.M.I. Service Systems, Inc. and F.A.M.I., Inc. which letterhead one partner testified was simply pulled out of a drawer and used as a convenience. It is unreasonable to find that with each check from a different source or each piece of correspondence transmitted on a different letterhead an assignment of the sublease was effected. In a business community where real estate management companies (such as the plaintiff here) are often employed to handle the property concerns of others, the signature on the rent check or the name on the letterhead should not be determinative of whether an assignment has transpired without further evidence that such is the case.

Knowledge of the assignment is an important element in determining that an assignment has taken place. In *Crossman*, the Court analyzed the assignment issue by applying the decision of the Florida Supreme Court in *Farmer's Bank and Trust Co. v. Palms Pub. Co.*, 86 Fla. 371, 98 So. 143 (1923) which held that the lessor waives a covenant requiring written consent by permitting the assignee to remain in possession and by accepting payment of accruing rents from the assignee with knowledge of the assignment. In the *Crossman* case, the tenant operated the premises under her own name and she was referred to as the tenant in letters from the lessor. Knowledge of whom the actual tenant was in that case can be assumed. In the case *sub judice*, the premises in question was never operated or known as F.A.M.I. There was no

evidence presented that Bresler ever recognized F.A.M.I. as the actual tenant of the premises. The Court finds that acceptance of some rent payments from a third party without other indicia of acceptance of an assignment cannot be assumed to constitute conduct reasonably susceptible of a construction that the landlord acquiesced to the assignment. The facts as presented here demonstrate a confusion of business entities used by the partners of C.C.L. and do not lead to the conclusion that Bresler had knowledge that it was dealing with other than the C.C.L. partnership and the partners individually. At best, the partners unintentionally ignored the distinctions between the business entities with which they are associated. At worst, they used a partnership when it was convenient to establish their franchise and attempted to use a corporation when it was advantageous to do so under the Bankruptcy Code.

For the reasons discussed herein, the Court will enter a final judgment declaring that the debtor and C.C.L. are not one and the same entity for purposes of applying the automatic stay provisions of 11 U.S.C. Section 362. Having found thus, the Court will further deny the debtor's plea for injunctive relief against the State Court eviction proceedings and other related litigation between Bresler and C.C.L. The action to lift the automatic stay as to C.C.L. will be declared moot.

### FINAL JUDGMENT

In conformity with the Findings of Fact and Conclusions of Law of even date, it is

ORDERED, ADJUDGED and DECREED that:

1. The debtor, F.A.M.I. Service Systems, Inc., and the partnership C.C.L. and its partners individually, are not one and the same entity for purposes of applying the automatic stay provisions of 11 U.S.C. Section 362 to State Court actions for eviction and other relief now pending between the plaintiff, Bresler Malls, Inc. and C.C.L., a Florida general partnership, and A. Ernest Cruz, Louis Cuayo and Faustino M. Lopez, as its partners.

2. The debtor's third-party complaint praying for injunctive relief against the State Court proceedings referred to above shall be and hereby is denied.

3. The action to lift the automatic stay under 11 U.S.C. Section 362 is hereby moot by virtue of paragraph 1 above.