BARKDULL, Chief Judge.
This appeal involves the correctness of a final decree rendered by the chancellor, granting a rescission of a 99-year lease. The record on appeal, viewed in a light most favorable to the appellee [which we are required to do when reviewing disputed issues which have been resolved by the trier of the facts; see: Carolina Lumber Company v. Daniel, Fla.App.1957, 97 So.2d 156; Town of Bay Harbor Islands v. Burk, Fla.App.1959, 114 So.2d 225; Bordacs v. Kimmel, Fla.App.1962, 139 So.2d 506], reveals the following:
In the spring of 1956, the appellee was interested in obtaining a site for the erection of a cafeteria, either it or its principals then being engaged in the cafeteria business throughout the greater Miami area. It contacted the appellants, or certain of them, who were real estate brokers [although no contention is made in this cause that they acted in such capacity for the appellee], and advised that it was desirous of obtaining a site in a particular area for the erection of an additional cafeteria to its chain. During the period between the spring of 1956 and September, 1956, the appellee through its principals and the appellants was seeking property suitable for the erection of the proposed cafeteria. By September of 1956, the parties had culminated their search and determined that they could erect the cafeteria they desired on a site composed of five lots, which are the subject matter of this litigation. At this time, it was apparent that the appellants could acquire four of the lots as 99-year leases, which they would subsequently sublease to the appellee with an override on the rent. But as to the fifth lot, the appellants would have to acquire a fee simple title and thereafter grant a basic 99-year lease to the appellee. The rent for the four lots was to be $8,000.00 per annum and the rent for the fifth lot was to be $1,500.00 per annum. All negotiations between the parties were oral; all agreements between the parties were oral; except the 99-year sublease as to the four lots.
Pursuant to the understanding in reference to acquiring the parcels, the appellee delivered a check to the appellants in the total amount of $9,500.00 in September, 1956, covering the advance rent on all five lots, with the understanding that it would secure a 99-year lease either in the form of a sublease or an original lease as to the parcels involved. Thereafter, a lease was prepared by counsel for the appellee, covering the entire five lots, and submitted to counsel for the appellants, which lease was rejected in part because the appellants were 99-year sublessees as four lots and were prospective fee owners as to the fifth lot. Thereafter, a 99-year lease was prepared as to the four lots in question for a rental of $8,000.00 per annum, which was duly executed in November, 1956, with the understanding that the lease would be *816 forthcoming as to the fifth lot by December 1, 1956. This was then subsequently extended until January 1, 1957, and negotiations continued into the early part of 1957 for the acquisition of the lease on the fifth lot. However, by March of 1957 no 99-year lease had been tendered as to the fifth lot, and the appellee elected to rescind the entire arrangements, even though it had expended considerable sums in developing architectural and engineering sketches providing for the erection of a cafeteria on the five lots [which was necessary to meet the minimum parking requirements of the municipal ordinances of the city wherein the land in question was located] plus the fact that they had undertaken to improve the parcel by clearing, grading, etc. As pointed out originally, some of these facts were disputed, but at this posture of the case we are required, as an appellate court, to accept the version of the evidence most favorable to the appellee. See: Carolina Lumber Company v. Daniel, supra; Town of Bay Harbor Islands v. Burk, supra; Bordacs v. Kimmel, supra.
A payment of rent became due under the 99-year lease as to the four lots on April 1, 1957, which was not made and the instant action was commenced in the trial court by the appellants, as plaintiffs, to recover this rental installment, which complaint was met with an answer and counterclaim for rescission based upon alleged fraud in the inducement. Subsequent to the pleadings being at issue, the chancellor entered a final decree adverse to the appellants on their complaint, and in favor of the appellee on its counterclaim awarding them rescission of the lease and the return only of the $9,500.00, but denying to them recovery of the $4,500.00 which the evidence disclosed they had spent in improving the lots. This appeal has been prosecuted from that final decree, and the appellants have preserved for review only the correctness of the chancellor’s decree for rescission.
Generally, an oral agreement within the statute of frauds cannot be rescinded. See: Canell v. Arcola Housing Corp., Fla.1953, 65 So.2d 849; Richard Bertram & Co. v. Barrett, Fla.App.1963, 155 So.2d 409; Black on Rescission & Cancellation, Vol. 1, §§ 1, 2, 4. However, where there has been part performance of the oral agreement [which takes the contract out of the effect of the statute of frauds] it may be rescinded. See: Maloy v. Boyett, 53 Fla. 956, 43 So. 243; Crossman v. Fontainebleau Hotel Corp., 5th Cir. 1959, 273 F.2d 720 ; 2 Corbin, Contracts, § 459 (1950). The latter situation is the one presented by this record on appeal. The original contract was made in September of 1956 when the $9,500.00 check was delivered, and the acts of the parties in November of 1956 were mere part performance of a previous agreement. Therefore, no error has been made to appear in the chancellor’s decree for rescission and the same is hereby affirmed.
Affirmed.
CARROLL, Judge, dissents.