## GULF-ATLANTIC PRODUCTION CREDIT ASSOCIATION v. RIGDON.

No. 725.

Circuit Court, Lake County.

May 5, 1970.

F. D. McKnight of Arnold, Matheny & Eagan, Orlando, for plaintiff.

Clark W. Jennings, Winter Park, for defendant.

W. TROY HALL, Jr., Circuit Judge.

*Order granting motion to strike plaintiff's affirmative defenses to defendant's counterclaim:* This cause came on for hearing on December 18, 1969 on the motion of the defendant to strike the affirmative defenses in plaintiff's answer to defendant's counterclaim, on which date the court entered its order granting the motion to strike the affirmative defenses as to counts 2 and 3 of the counterclaim, and requiring counsel for the parties to file written memorandums with the court regarding their positions on the motion to strike as to count 1 of the counterclaim. The court has carefully studied the memorandum briefs submitted by counsel for both plaintiff and defendant, and has otherwise been duly advised of its judgment in the premises, as hereinafter set out —

1. Count 1 of the counterclaim alleges —

(a) Prior to December 9, 1965, defendant owed plaintiff about $72,000, for which he had given a mortgage on the same real estate as that described in the mortgage sought to be foreclosed. In December, 1964, he applied for an advance of about $8,000. In January, 1965, the manager of plaintiff's Eustis office told defendant that "headquarters" had ruled that defendant would have to set out another forty acres of grove before he would be advanced any more money; but, if defendant would set out the additional grove, plaintiff would finance the continuing cultivating and fertilizing of the old grove, and the setting out of the new grove and bringing it into production, at which time the new grove could be sold and the proceeds derived therefrom applied against the mortgage debt.

(b) Defendant accepted said proposal, prepared a forty-acre tract for planting, and procured and planted the trees as required by plaintiff. In due course, defendant received from plaintiff the $8,000 requested. However, he ran out of money in September, and applied to the Eustis office manager for an additional advance of $900 for living expenses and for fertilizer for the young grove. The manager thereupon promised to make such application to plaintiff in behalf of defendant and to work out a five-year program for defendant; but he did neither.

(c) Defendant thereafter applied to the manager of plaintiff's Orlando office, who personally inspected the groves, stated that all of them needed fertilizer, and made an advance to defendant for that purpose in the sum of $1,950. On December 9, 1965, defendant executed a new note for $81,400 to take the place of the old mortgage note and the intervening advances, and, on December 17, 1965, executed a new mortgage to secure said note, which mortgage is now in the process of foreclosure in this suit. Said mortgage contains the following language —

> "In consideration of and to secure all existing indebtedness of Mitchell Rigdon, not married, * * and all advances that may be made by lender to borrower within twenty years from the date of this mortgage, with interest thereon (the total principal amount secured hereby not to exceed at any one time two hundred thousand dollars)."

(d) In January, 1966, defendant asked the manager of plaintiff's Orlando office if plaintiff intended to finance him further. The manager answered the question in the affirmative, and instructed defendant to take care of the groves. Defendant thereupon filled out an application for $7,700 with which to pay the installment due on the first mortgage to the Federal Land Bank, taxes, and living expenses. Plaintiff sent a check to the Federal Land Bank for interest, which, because of a freeze that year, was all it required, and gave defendant checks totaling $3,400. The balance of defendant's said application, which had been approved, was cancelled by Campbell and Grady, who took over the management of plaintiff.

(e) The mortgage includes a crop lien on the grove, and plaintiff receives the entire proceeds realized from the sale of the fruit, but has failed and refused to furnish fertilizer and other materials necessary for the proper cultivation of the groves, or to make available to defendant the necessary funds for such purposes. As a result, the groves have received no fertilizer or other materials necessary for their proper cultivation for a period of four years, although defendant has continued to disc them at his own expense. Because of lack of fertilizer and other care, resulting solely from plaintiff's refusal to provide such essentials in accordance with its contract with defendant, the new forty-acre grove has withered and died; and the old groves, which had been maintained in excellent condition by defendant as long as he had been able to furnish them with fertilizer and other proper cultivation, have deteriorated so greatly that many of the trees have died and the balance of the trees have been badly damaged.

(f) Plaintiff's mortgaged property comprises a total of 421.43 acres; and, up to the time the groves were neglected as herein set out, had a market value in excess of $400,000. By reason of the matters and things alleged, the crop production from the groves has been drastically curtailed.

(g) Plaintiff refused to renew or continue its said mortgage indebtedness, and instituted foreclosure. Although plaintiff has continued to receive all of the proceeds from the fruit produced by said grove, it has failed and refused to pay the Federal Land Bank the installments of interest and principal accruing on its first mortgage, and to pay the taxes becoming due and payable on said property, and to permit a release of any of said property from its mortgage lien in order that said portions might be sold and the proceeds derived therefrom applied on the mortgage indebtedness. The actions of plaintiff have caused said property to depreciate to a market value of less than $100,000, and have also caused defendant such distress of mind and spirit that he has become seriously ill.

2. In due course, plaintiff filed a motion to dismiss and alternative motion to strike. Paragraph 2(b)(c) of the motion to dismiss reads as follows —

> (b) That the counterclaim evidences an agreement which on its face cannot be performed within one year and that no written evidence of that agreement is alleged or attached to the counterclaim, and that the allegations of the counterclaim therefore violate the statute of frauds.

> (c) That the counterclaim shows on its face that the defendant is relying upon parol evidence to vary the terms of a written instrument which is in violation of the parol evidence rule.

Said motions were argued before the Honorable Woodie A. Liles on August 27, 1969, who denied the motion to dismiss, reserved ruling on the motion to strike the allegation for punitive damages, and in all other respects denied the alternative motion to strike.

3. Within the time prescribed by Judge Liles' order, plaintiff filed affirmative defenses to the counterclaim, numbered 4 through 8, which, briefly, allege —

> (4) The counterclaim evidences an agreement which on its face cannot be performed within one year, and therefore violates the statute of frauds.

> (5). The counterclaim shows on its face that the defendant is relying upon parol evidence to vary the terms of a written instrument, in violation of the parol evidence rule.

> (6) The counterclaim shows on its face that all matters and things therein alleged which occurred prior to December 17, 1965, were merged into and governed by the mortgage and note dated December 17, 1965.

(7) The counterclaim alleges no enforceable contract between plaintiff and defendant, in that there is no consideration for any alleged agreement subsequent to the date of the mortgage.

(8) The counterclaim alleges no ultimate facts showing any obligation on the part of the plaintiff to make any further advances; and shows no obligation to release any land mortgaged, to subordinate any other loans and mortgages, to furnish fertilizer or other materials, to renew or continue defendant's mortgage, or to pay other mortgages on behalf of the defendant.

4. In his motion to strike addressed to the affirmative defenses to his counterclaim, defendant alleges that the affirmative defenses were specifically or substantially included in plaintiff's motion to dismiss and to strike the counterclaim, which motions were denied by Judge Liles, and that each of the affirmative defenses wholly fails to constitute a defense to the counterclaim.

5. In his memorandum brief, defendant has argued that —

(1) A pleader should not be permitted, under the guise of filing affirmative defenses, to file a second motion to dismiss.

(2) Judge Liles' order of August 27, 1969, denying plaintiff's motion to dismiss the counterclaim established the law of the case. Therefore, affirmative defenses (4) and (5) should be stricken.

(3) Even if properly pleaded as a defense, the statute of frauds is not applicable to the case at bar.

(4) Even if properly pleaded as an affirmative defense, the parol evidence rule is not applicable to the case at bar.

(5) The matters and things alleged in the counterclaim which occurred prior to December 17, 1965, were not merged in the mortgage dated December 17, 1965.

(6) The counterclaim alleges consideration for the agreement subsequent to the date of the mortgage.

(7) The counterclaim alleges ultimate facts showing an obligation on the part of the plaintiff to entitle the defendant to the relief for which he has prayed in his counterclaim.

6. Concurrently with the filing of its memorandum brief, plaintiff, without seeking permission of the court to do so and without authority of law, filed an amended answer to the counterclaim, which contains, in substance, the same identical affirmative defenses alleged in its original answer thereto, the only changes being that the words "The counterclaim evidences an agreement which on its face" (in 4), "The counterclaim shows on its face" (in 5 and 6), "The counterclaim alleges no enforceable contract between the plaintiff and defendant in that" (in 7), and "The counterclaim alleges no ultimate facts showing" (in 8) have been deleted.

7. In its memorandum brief, plaintiff concedes that it should not be permitted to again raise the very same identical questions which it raised by its motion to dismiss and to strike the counterclaim. It contends it has therefore attempted to file an amended answer which prevents these defenses from being the "very same identical" defenses so raised, and accordingly from amounting to another motion to dismiss the counterclaim.

8. In his reply to plaintiff's memorandum brief, defendant contends that plaintiff's purported amended answer to the counterclaim has been improperly filed, but, even had it been filed with permission of the court, there is no difference between plaintiff's original affirmative defenses and its purported amended affirmative defenses. For all practical and legal purposes, defendant argues, the purported amended affirmative defenses are nothing more than what amount to another motion to strike the counterclaim, and are otherwise wholly insufficient as affirmative defenses thereto.

9. The court agrees with defendant's contention that the amended affirmative defenses to the counterclaim were improperly filed, and are therefore entitled to no consideration by the court. The court further agrees with defendant that, even had said amended affirmative defenses been properly filed, they constitute no improvement on the original affirmative defenses to the counterclaim, to each of which the court finds that defendant's motion to strike should be granted, for the following reasons —

a. Plaintiff raised its first two affirmative defenses to the counterclaim, namely, (4), the statute of frauds and (5), the parol evidence rule, by a motion to dismiss authorized by the last sentence of Rule 1.110(d). By his order of August 27, 1969, denying said motion to dismiss, Judge Liles ruled that the counterclaim does not show on its face a violation of the statute of frauds or of the parol evidence rule. To sustain plaintiff's affirmative defenses 4 and 5 to defendant's motion to strike would, in effect, permit the filing of a second motion to dismiss, and overrule Judge Liles' order of August 27, 1969, which was entered after a full hearing and established the law of the case, that the statute of frauds and the parol evidence rule are not applicable as defenses to the counterclaim.

b. Even had the affirmative defenses been properly pleaded, neither the statutes of frauds nor the parol evidence rule constitutes a defense to the case at bar. The statute of frauds applies only to agreements not to be performed on either side within one year. Yates v. Ball, Fla., 181 So. 341. If a contract has been or could have been performed within a year by one of the contracting parties, a suit on the contract is not subject to the defense of the

statute of frauds. Schenkel v. The Atlantic National Bank of Jacksonville, as Executor, Fla., 141 So.2d 327, 2nd Dist.; Hagan v. Laragione, Fla., 170 So.2d 69, 2nd Dist. Our Supreme Court has held that facts which would make a transaction a fraud on one of the parties if not enforced will relieve a contract otherwise within the statute of frauds from the operation thereof. Todd v. Hyzer, Fla., 18 So.2d 888. The governing principles by which part performance may remove an oral contract from the effect of the statute of frauds are well settled — payment of part of the consideration, whether in money or in services; possession by the parties seeking to enforce the contract; the making by said party of valuable or permanent improvements; or proof of such facts as would make the transaction a fraud upon said party if the agreement were not enforced. Purvis v. Malloy, Fla., 176 So. 71; Miller v. Murray, Fla., 68 So.2d 594. The statute of frauds is inapplicable when a contracting party has partially performed his share of the bargain. Crossman v. Fountainebleau Hotel Corp., 273 F.2d 720; Moore v. Staalac, Inc., No. 2, Fla., 166 So.2d 814, 3rd Dist.

c. It clearly appears from the allegations of count 1 of the counterclaim, set out on pages 1-3 of this order, that (1) none of the oral agreements between defendant and the agents of plaintiff specifically requires said agreements not to be performed within one year; (2) there was part performance by both parties; (3) defendant has fully performed; (4) said oral agreements, to the extent sued upon, are executed and not executory; and (5) to deny defendant the relief he seeks would be to permit the perpetration by plaintiff of an unconscionable fraud on defendant. Any allegation to the effect that a period of time of more than one year was contemplated was and is surplusage, and is not essential to defendant's cause of action on his counterclaim. Defendant has stated nothing in his counterclaim that contradicts the terms of the mortgage or any other record he has signed. He is entitled to show by parol any terms of the contract entered into between him and the plaintiff which are in addition to those set out in the written instrument, or which are separate therefrom. If plaintiff believes that the allegations of the counterclaim violate the parol evidence rule (to which there are many exceptions), it should have stated the nature of the violation. Plaintiff has made no attempt to do so. Heffernan v. Keith, Fla., 127 So.2d 903.

d. If a case is taken out of the statute of frauds by part performance, parol evidence is properly admissible to prove the terms of the agreement relied on. Crossman v. Fountainebleau Hotel Corp., 273 F.2d 720. In a suit to foreclose a mortgage, the mortgagor may show by parol evidence that the note and mortgage were but

part of the entire agreement. Coleman v. Brooks, Fla., 113 So.2d 590, 2nd Dist. Fraud or deception prevent a defense on the ground of a violation of the parol evidence rule. Gulf Theatres v. Guardian Life Insurance Co. of America, Fla., 26 So.2d 188. The rule that prevents any written contract from being altered or varied by parol proof of another or materially variant verbal contract or agreement made at the same time does not prohibit the establishment by parol of a subsequent contract that alters, modifies, or changes the former existing written agreement between the parties. Wilson v. McClenny, Fla., 13 So. 873. It is only when a writing is couched in terms which import a complete legal obligation, with no uncertainty as to object or extent of engagement, that it is conclusively presumed that the whole agreement of the parties and the extent and manner of their undertaking were embraced in the writing. The chief and most satisfactory index is found in the circumstance of whether or not the particular element of the alleged extrinsic negotiation is dealt with at all in the writing. If the fact sought to be established is not dealt with at all in the writing, it is presumed that the writing does not represent all the transaction on that element, and parol evidence and proof of such element is admissible. 13 Fla. Juris., pp. 391-393. It is permissible to supply by parol evidence those things which were omitted if the part omitted is not inconsistent with the writing, but independent of and in addition to it. 17 Am. Jur. 2d, *Contracts,* p. 666; Anno: 85 ALR 2d, 1277 et seq. An oral agreement is not superseded or invalidated by a subsequent or contemporaneous integration, or a written agreement by a subsequent integration relating to the same subject matter, if the agreement is not inconsistent with the integrated contract, and is such an agreement as might naturally be made as a separate agreement by parties situated as were the parties to the written contract. *Restatement of the Law, Contracts,* p. 335. See, also, Paradise Beach Homes, Inc. v. So. Atl. Co., Fla., 118 So.2d 825. The entire contractual relations of the parties must be considered in order to prevent fraud. DeBartlett v. DeWilson et al, Fla., 42 So. 189, wherein our Supreme Court held that, in order to carry out the intention of the parties, and to prevent fraud and imposition, and to promote justice, parol evidence is admissible to show that a deed of conveyence of land absolute upon its face was intended to operate as a mortgage.

e. The general rule that all prior negotiations become embodied in the writing when both the parties sign a written contract does not ordinarily apply in cases of fraud. 37 Am. Jur. 2d, pp. 524-525. Conduct comprehended within the term "fraud" assumes many shapes, disguises, and subterfuges; and the word does not lend itself to precise definition. Moreover courts are unwilling to

limit the meaning of the term for fear that some newly devised type of unfair dealing may arise that is not covered by the definition. Constructive fraud may exist independently of an intent to defraud. Thus, constructive fraud is deemed to exist where a duty under a confidential or fudiciary relationship has been abused, or where unconscionable advantage has been taken. 14 Fla. Juris., *Fraud and Deceit*. It is well known that many good people of average or greater intelligence are sometimes duped and misled by the skill, cleverness, and artifices of those who are adepts in the matter of deceiving their fellow men; and courts should not throw about schemers of this kind a protection that will tend to encourage the practice of their arts. To the victim, it is of little import whether his property is taken from him by a bold and forceable robbery or by an ingenious and unsuspected deception. The injury to him is the same; and the evil effect of court decisions which permit the wrongdoer to enjoy the fruits of his chicanery is of no small import when viewed from the standpoint of public policy. Peacock Hotel v. Shipman, Fla., 138 So. 44.

f. A reference by the court to the contents of count 1 of the counterclaim, above referred to, shows no conflict between the terms of the mortgage and the oral agreements relied upon. There is no variance of the mortgage by said oral agreements. There is no basis for holding that the note and the mortgage embodied all agreements between the parties. Even if there were, it is apparent from the allegations of said count 1 that an unconscionable fraud would be purpetrated on the defendant if he were not permitted to prove by parol evidence the actual agreements between the parties.

g. The discussions, matters, and things alleged in the counter-claim which occurred prior to December 17, 1965, were not merged in the mortgage dated December 17, 1965. There is no variance between the terms of the mortgage and the terms of said oral agreements. The mortgage provided a vehicle for all of such agreements. In any event, said agreements are not within the statute of frauds or in violation of the parol evidence rule, and are based on valid consideration as therein set out.

h. All agreements subsequent to the mortgage date were based on valid consideration. It is alleged that plaintiff's manager informed defendant that plaintiff intended to finance defendant further, and instructed defendant to take care of the groves, and approved his application for a subsequent loan to pay the installment due on the first mortgage to the Federal Land Bank, taxes, and living expenses. It is further alleged that plaintiff did send a check to the Federal Land Bank for interest, and gave defendant checks totaling $3,400. It is also alleged that in consideration of

the promises of plaintiff to defendant, and the acts of plaintiff herein set out, defendant continued to disc the groves at his own expense, despite the fact that plaintiff continued to receive all the proceeds from the fruit produced by the grove. It is sufficiently alleged that it was the intention of the parties that the plaintiff would furnish money for the payment of taxes, fertilizer, cultivation, and for the payments on the first mortgage in return for its receiving a second mortgage on all of defendant's land and a first crop lien on all of the fruit produced thereby. The counterclaim alleges ultimate facts showing an obligation on the part of plaintiff to entitle defendant to the relief for which he has prayed.

It is therefore ordered that the defendant's motion to strike plaintiff's affirmative defenses set out in its answer to the counterclaim is hereby granted, and said affirmative defenses are hereby stricken with prejudice.

It is further ordered that, for the reasons hereinabove set out, plaintiff's purported amended answer to the counterclaim is hereby stricken with prejudice.